## MAC ABOY v. KLECKA, Marshal.
### No. 6380,

District Court, D. Maryland.
March 14, 1938.

R. Lewis Bainder, of Baltimore, Md., for petitioner.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for government.

CHESNUT, District Judge.

The petitioner for habeas corpus in this case is in the custody of the United States Marshal for the District of Maryland, under a warrant issued by the Chairman of the United States Parole Board for his *return to the United States Northeastern Penitentiary at Lewisburg, Pa., for alleged breach of the conditions of his release from that institution* on September 18, 1937. The warrant is authorized by the United States Code, title 18, §§ 717 and 723c, 18 U.S.C.A. §§ 717 and 723c, the latter being from the Act of May 13, 1930, c. 255, § 3. Its formal sufficiency has not been challenged here. See United States ex rel. Rowe v. Nicholson, 4 Cir., 78 F.2d 468, certiorari denied Rowe v. Nicholson, 296 U.S. 573, 56 S.Ct. 118, 80 L.Ed. 405; Jarman v. United States, 4 Cir., 92 F.2d 309.

The warrant recites that Charles Mac Aboy "was sentenced by the United States District Court for the District of Columbia to serve a sentence of two to five years for the crime of first degree murder; was released conditionally from the Northeastern Penitentiary, Lewisburg, Penna., on the 18th of September, 1937," and that "reliable information has been presented to the undersigned member of this Board that said prisoner named in this warrant has violated the conditions of his release and is therefore deemed to be a fugitive from justice." The

warrant commands the officer to whom it is addressed to take the said Charles Mac-Aboy "and him safely return to the institution hereinafter designated." The warrant does not itself designate the institution to which the prisoner is to be returned, but it was understood at the hearing that the marshal had instructions from the parole board to return the prisoner to Lewisburg, Pa.

It will be noted that the reason for the arrest and return of the prisoner is the alleged violation of his parole. Upon his return to the designated institution he will be entitled to a prompt hearing to be given by the parole board as to whether he should be released or his parole revoked and his imprisonment continued until the expiration of the terms for which he was sentenced. U.S.C.A. title 18, § 719. United States ex rel. Rowe v. Nicholson, 78 F.2d 468, supra.

As it appears from the warrant that the prisoner was only *conditionally* released from Lewisburg and as it is alleged that he has violated his parole and is therefore subject to reimprisonment, and as the hearing on the charge has not been held, it is doubtful whether the prisoner in this application for habeas corpus has a right to go behind the recitals in the warrant; because it would seem clear enough that the hearing to which he is entitled on the charge of violation of parole cannot be given by this court but must be given by the parole board. Furthermore, the petitioner has not undertaken to challenge the correctness of the recitals in the warrant, although he apparently contends that the papers that he signed evidencing his conditional release from Lewisburg were signed under duress in that he protested at the time he signed them that he should have been *unconditionally* released. Neither the warden at Lewisburg nor the parole board is a party to the proceeding in this court and it is not apparent how this issue could be properly here tried in their absence.

But if the prisoner's contention were open to him at this time, I am not persuaded that it is sound. Briefly stated, the contention of his counsel is that on September 18, 1937, his original sentence for the maximum five years, after making deduction for good time allowance while in prison, terminated on September 18, 1937, and that he was then entitled to be unconditionally released and not merely conditionally released. As to this, it will be noted that title 18 U.S.C.A.,

§ 716b, is expressly to the contrary. See Zerbst, Warden v. Kidwell, 5 Cir., 92 F.2d 756. Petitioner further contends that section 716b is not applicable to his case because he was sentenced in the District of Columbia for a violation of the laws of the District which he contends was not an offense against the United States as such, but only against the Code of the District of Columbia, and therefore he is not a "United States prisoner" within the meaning of section 716b. The verbal distinction is not sound. Arnstein v. United States, 54 App.D.C. 199, 296 F. 946. Petitioner's contention, however, goes a little farther as he says that he was sentenced under a particular Act of Congress for the District of Columbia approved July 15, 1932, 47 Stat. 697, D.C.Code, Supp. I, 1933, T. 6, § 451 et seq.; section 4, D.C.Code Supp. I, 1933, T. 6, § 454, of which he contends provides that sentences thereunder terminate *unconditionally* when the maximum period has been served, after deducting such time for good conduct as may be provided by law. It is not certainly clear from this last statute, when section 4 is read in connection with section 5, D.C.Code, Supp. I, 1933, T. 6, § 455, that the construction is sound; but if it be conceded that it is, counsel for the prisoner has not pointed to *what* good time allowance has been provided by law applicable to prisoners sentenced in the District of Columbia under the statute other than title 18 U.S.C.A. §§ 710, 710a, 711, 712, 713, and 716b, supra, dealing with the general subject as applicable to *United States prisoners*. It was under the authority of these sections that the petitioner was *conditionally* released on September 18, 1937. If the distinction that he seeks to make between United States prisoners and prisoners under sentence for violation of the Code of the District of Columbia is sound, it does not appear that he was entitled to any good time allowance at all.

Counsel for the petitioner also states his contention in a somewhat different way. He says that sentences under the Indeterminate Sentence Act applicable to the District of Columbia of July 15, 1932, above mentioned can be served only in a jail, reformatory, or penitentiary *of the District of Columbia,* and he says, therefore, that his confinement at Lewisburg was at no time lawful. It appears from the record of his case that on November 15, 1933, in the Supreme Court of the District of Columbia (now the District Court of the United

States for the District of Columbia), he entered a plea of guilty to manslaughter under an indictment charging first-degree murder, in two separate cases, and was "sentenced to penitentiary for a period of two to five years to take effect from and including this date." He was thereafter actually confined in the District of Columbia Reformatory at Lorton, Va., until about October, 1934, when, upon the authority of the Attorney General, he was removed to Milan, Mich., and some time thereafter to Lewisburg, Pa. See title 18, U.S.C.A. § 753f. He says that he protested his removal from Lorton, Va., claiming that he could only be confined in a penal institution for the District of Columbia. The point he makes is that, as the *special parole board for the District of Columbia* created by the Act of July 15, 1932, supra, could function as to the parole and indeterminate sentence feature of the act, only with respect to prisoners in the particular District of Columbia institutions, and as the general United States Parole Board had no authority to administer the local act, by necessary implication his confinement could properly be only in an institution where the local District of Columbia parole board could function. This contention would have had some plausibility between July 15, 1932, and June 5, 1934, on which latter date Congress amended the parole statutes by giving the "same power and authority over prisoners convicted in the District of Columbia of crimes against the United States and now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the Board of Indeterminate Sentence and Parole over prisoners confined in the penal institutions of the District of Columbia," to the general federal board of parole. See Act June 5, 1934, 48 Stat. 880, D.C.Code, Supp. II, 1935, T. 6, § 459, adding section 10 to Act of July 15, 1932. But it will be noted that the petitioner was not removed from Lorton, Va., until after this latter Act of June 5, 1934, and thereafter as applied to his situation the contention that he could properly be confined only at Lorton, Va., seems untenable.

A similar contention was made in Aderhold v. Lee, 5 Cir., 68 F.2d 824; but there failed because the prisoner had been sentenced in the District of Columbia *prior to* July 15, 1932. It was indicated that the point would have been good if the sentence had been after July 15, 1932; but the case was decided before the Act of 1934, supra. The same contention now made here was also unsuccessfully made under parallel circumstances in Bracey v. Hill, 11 F.Supp. 148, D.C.N.D.Pa. It was said by the United States Attorney at the hearing in this case that the prisoner in Bracey v. Hill was subsequently removed to Fort Leavenworth and thereafter applied for habeas corpus in the 10th Circuit, where on appeal Circuit Judge Phillips, speaking for the 10th Circuit Court of Appeals, also held that the point was untenable. Bracey v. Zerbst, Warden, 93 F. 2d 8. From these cases it will be noted that Bracey was sentenced in the District of Columbia on December 16, 1932, *after* the passage of the Indeterminate Sentence Law for the District of Columbia on June 15, 1932, and *before* the amendatory act of June 5, 1934, supra. And this compares with the sequence of dates in the instant case where the petitioner here was sentenced in the District of Columbia on November 15, 1933.

I am not able to see that any constitutional rights of the prisoner have been invaded by the amendment of 1934, which merely bestows on the general parole board the same authority previously delegated to the local parole board. Parole is not a matter of right but of grace. Furthermore, if petitioner's contention were sound, it does not follow that he is entitled to be released now, but he would have to be recommitted to the penitentiary at Lorton, Va., subject to the supervision of the local parole board. The District Judge in the Aderhold Case, supra, D.C., 5 F.Supp. 950, was of the opinion that this course should have been followed, but on appeal the Circuit Court of Appeals reversed on the main point in the case. For these reasons, I have felt obliged to refuse to release the prisoner, and must order that he be recommitted to the custody of the marshal of this District by whom he was arrested, and that the marshal execute the warrant for his return to the institution designated by the Attorney General, which I understand will be Lewisburg, Pa., where he will be entitled to a prompt hearing from the parole board as to whether his parole should be revoked or he should be again released.