James M. GILSTRAP, Appellant,

v.

Donald CLEMMER et al., Appellees.

No. 8194.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 7, 1960.

Decided Nov. 17, 1960.

Alexander Wellford (Court-assigned counsel), Richmond, Va., for appellant.

Harvey B. Cohen, Asst. U. S. Atty., Arlington, Va. (Joseph S. Bambacus, U. S. Atty., Richmond, Va., on the brief), for appellees.

Before SOBELOFF, Chief Judge, and SOPER and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

James M. Gilstrap appeals from an order of the District Court for the Eastern District of Virginia of June 28, 1960, dismissing his habeas corpus petition wherein he sought release from the District of Columbia Reformatory at Lorton, Virginia. The question here presented is whether deduction from sentence for good conduct of a prisoner convicted of a violation of a District of Columbia criminal statute and recommitted to a District of Columbia penal institution as a conditional release violator by the District of Columbia Board of Parole should be computed under the general statutes of the United States [1] or, as held by the District Court, under the modified provisions of the District of Columbia Code.[2] We are of the opinion that the habeas corpus petition was properly denied.

Petitioner was convicted on charges of rape in violation of the then pertinent provision of the D.C.Code, now Title 22, § 2801, "against the peace and government of the United States." On December 2, 1938, he was sentenced on three counts, on the first to a term of six to twelve years, and on each of the other two counts to a term of two to four years, the sentences to run consecutively and aggregating a maximum of twenty years. At the time of his initial commitment to the District Reformatory at Lorton, the Reformatory computed his good conduct allowance or deduction under the provisions of the general statutes of the United States, formerly 18 U.S.C. § 710, now 18 U.S.C. § 4161. Since the time of petitioner's original commitment, the general statutes granted the following good conduct deduction:

"Five days for each month, if the sentence is not less than six months and not more than one year.

"Six days for each month, if the sentence is more than one year and less than three years.

"Seven days for each month, if the sentence is not less than three years and less than five years.

"Eight days for each month, if the sentence is not less than five years and less than ten years.

"Ten days for each month, if the sentence is ten years or more." 18 U.S.C. § 4161 (1952).

When the present District of Columbia Board of Parole was created in 1932, it was vested with all the powers and authority of the Federal Parole Board over persons committed to the District's penal institutions, 47 Stat. 696, and, with no specific or separate provision being made for good conduct deduction for District prisoners, it was bound by the general United States statutes pertinent to parole and conditional release. A 1940 amendment to the D.C.Code, 54 Stat. 245, provided a schedule of good conduct deductions specifically for persons committed to the District institutions, identical to the schedule of the general United States statute as set out above.

When the system of parole for the District of Columbia was reorganized in 1947, an amendment providing for the computation of good conduct deductions for recommitted parolees was adopted, providing as follows:

"When a prisoner has been retaken upon a warrant issued by the Board of Parole, he shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board. At such hearing he may be represented by counsel. The Board may then, or at any time in its discre-

---

1. 18 U.S.C. § 4161.

2. 24 D.C.Code, § 206.

tion, terminate the parole or modify the terms and conditions thereof. If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody. *For the purpose of computing commutation for good conduct, the remainder of the sentence originally imposed shall be considered as a new sentence.* The time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced.

"In the event a prisoner is confined in, or as a parolee is returned to a penal or correctional institution other than a penal or correctional institution of the District of Columbia, the Board of Parole created by section 723a, Title 18, U.S.Code, [The Federal Parole Board] shall have and exercise the same power and authority as the Board of Parole of the District of Columbia had the prisoner been confined in or returned to a penal or correctional institution of the District of Columbia." Now 24 D.C.Code 206 (1951). (Emphasis supplied.)

The general statutes of the United States have never contained a provision similar to this amendment to the D.C.Code, treating the balance of the term of sentence of a recommitted parolee as a new sentence for the purpose of computing his good conduct credit after his recommitment.

When on December 2, 1938, petitioner began serving his sentences, the application of the general United States statutes then in effect resulted in the aggregation of his sentence into a maximum term of ten to twenty years and in the computation of good conduct deduction at a rate of ten days per month, or a total credit of 2,400 days. On December 23, 1950,

petitioner was released under the supervision of the District of Columbia Board of Parole having been given the statutory deduction of 2,400 days for good conduct, plus an additional 501 days for industrial service [3] resulting in a total commutation of 2,901 days. Petitioner was rearrested on January 30, 1953, for a violation of the terms of his conditional release and was recommitted to serve the prior commuted balance of 2,901 days on his original sentence which, pursuant to the 1947 D.C.Code amendment, was treated as a new sentence of five to ten years for the purpose of determining the recommitment good conduct deduction. He was thus granted a deduction of eight days per month, or a total deduction of 762 days. Under the general United States statutes, the computation upon the recommitment would have been based on the original aggregate term of ten to twenty years and would, therefore, have carried a credit of ten days per month resulting in an earlier release date than that allowed by the District Code amendments.

On July 21, 1958, petitioner was again conditionally released under the supervision of the D. C. Parole Board having been credited with an earned good conduct deduction of 762 days and an additional deduction of 140 days for industrial service, a total credit of 902 days. On February 22, 1959, this second conditional release was revoked and the petitioner was recommitted to the Lorton Reformatory to serve the commuted balance of the term still owing of 902 days. Under the 1947 amendment to the District Code, the 902-day term was treated as a new term of one to three years and his good conduct credit was calculated at the rate of six days per month for a total allowance of 178 days, entitling him to release on December 13, 1960. Petitioner contends that by the provisions of the general U. S. statutes, as a conditionally released prisoner, he had the status of a parolee thereunder and there-

---

**3.** The additional commutation credits earned for industrial service are not in issue in this case but are included to accurate-ly reflect the extent of petitioner's releases from the Reformatory.

fore his custodian should have computed his good conduct deduction at the rate of ten days per month instead of applying the D.C.Code amendment and treating the remainder of his sentence as a new sentence.

Petitioner herein relies on 18 U.S.C. § 4164 (1952) which provides:

"A prisoner having served the term or terms for which he shall have been sentenced after June 29, 1932, less good time deductions, shall upon release be treated as if released on parole, and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms for which he was sentenced * * *."

When this section is read together with the general United States statutory schedule for computation of the good conduct allowance upon recommitment, see Bragg v. Huff, 4 Cir., 1941, 118 F.2d 1006, it is apparent that under petitioner's construction he would be entitled, notwithstanding his releases and rearrests, to a good conduct deduction based on the original aggregate term of ten to twenty years upon each recommitment. The application of the general U. S. statutes, together with the industrial service credits, would have permitted petitioner's release on February 23, 1960. If petitioner is subject to the 1947 D.C.Code amendment, he will not be entitled to release until December 13, 1960.

There is no provision in the District Code similar to Section 4164 by the terms of which conditional releasees are to be treated as parolees subject to " * * * all provisions of law relating to the parole of United States prisoners * * *." However, since Chapter 309 of 18 U.S.C., in which this section is embodied, relates and applies to all persons convicted of " * * * offenses against

the United States * * *," it is unnecessary that the same provision be contained in the D.C.Code. While the D.C. Code may contain a separate criminal statute, a violation of such Code is regarded as an offense against the United States.[4] It follows that one, such as petitioner, convicted of a crime in violation of the D.C.Code is at the same time guilty of an offense against the United States.[5] Consequently, petitioner comes within the purview of Chapter 309 of 18 U.S.C., and though released in every instance as a conditional releasee, the effect of Section 4164 was to give him the same status as that of a parolee of the District of Columbia.

However, we do not agree with the petitioner's contention that the import of Section 4164 be extended so as to require that he be recommitted under the good conduct deduction provisions of the general federal statutes without regard to the special modification contained in the 1947 D.C.Code amendment. The granting to the Board of Parole for the District, upon its creation in 1932, of all powers and authority of the Federal Parole Board as contained in the general statutes then in effect was done so as to " * * * provide a uniform administration of the federal and District laws with respect to the control of released prisoners." Gould v. Green, 1944, 78 App. D.C. 363, 141 F.2d 533, 536. Not only does the Gould case clearly recognize the existence of distinct laws relating to parole, the District and the general federal, it emphasizes that the uniformity sought is that of the *control* over the prisoner on release. The purpose underlying congressional intent in this connection was simply to recognize the fact " * * * that society would be better served if such prisoners [conditional releasees] were subjected to the same supervision as parolees * * *." Story v. Rives, 1938, 68 App.D.C. 325, 97 F.2d 182, 187.

4. Arnstein v. United States, 1924, 54 App. D.C. 199, 296 F. 946; MacAboy v. Klecka, D.C.Md.1938, 22 F.Supp. 960.

5. Each count in petitioner's indictment, though charging violation of the D.C. Code, concluded that such offense was " * * * against the peace and government of the said United States."

The essential purpose in the creation of the two boards of parole, in view of the powers which have been granted to them, does not appear to require that District of Columbia conditional releasees be subject to the same recommitment standards as federal prisoners outside the District, but appears rather to provide a uniform degree of supervision and control over the prisoners when *on release*. The above provisos of Section 4164, which pertain to powers of the Federal Parole Board, became pertinent to the District Board upon its creation in 1932 and thus provided for a uniform application of regulations *within* the separate jurisdictions. If petitioner's interpretation is correct, a uniform application of recommitment standards would be required as *between* the two jurisdictions and the separate recommitment provisions of the District Code would be nullified, ignoring the very nature of the District of Columbia as a separate jurisdiction.

■ In many respects the District is an entity separate and apart from the general federal system, the powers of Congress over the District being in the nature of those of a state legislature. District of Columbia v. John R. Thompson Co., Inc., 1953, 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480. Congress may adopt one rule of substantive criminal law for the District while promulgating yet another for the general federal system. Griffin v. United States, 1949, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993; Johnson v. United States, 1912, 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142. Therefore, if the act is in violation of the District of Columbia law, the offender is subject to that law which defines the offense and prescribes the penalties and conditions to be imposed. Just as the penalty for the offense would be determined by the jurisdiction whose law was violated, whether the District or general federal, so would the terms and conditions of parole be governed by the law of that jurisdiction. If the conviction is for an offense committed within the District but in violation of general federal law, see Johnson v. United States, supra, the power and authority given by Section 4164 to the Federal Board of Parole can be exercised independently by that Board over a criminal confined for such offense in a non-District institution. While Section 4164 thus defines a part of the general powers of the District and Federal Boards of Parole, the 1947 amendment to the D.C.Code is applicable only to District conditionally released prisoners who are treated as parolees.

■ Petitioner contends that the application of the 1947 amendment, as it reduced his good conduct allowance below that provided in the general United States statutes, resulted in an arbitrary and capricious classification denying him the equal protection and due process of law as guaranteed by the Fifth Amendment to the United States Constitution. We do not agree. The District Parole Board has jurisdiction and control over persons incarcerated in the penal or correctional institutions of the District. By the terms of the 1947 D.C.Code amendment, the Federal Parole Board obtains jurisdiction of the District prisoners only if they are originally committed to non-District institutions, or if on the revocation of their parole, they are recommitted to non-District institutions. Noll v. Board of Parole, 1951, 89 U.S.App.D.C. 206, 191 F.2d 653. While the situs of the institution determines which parole board shall have supervisory jurisdiction over the prisoner, the designation of the place of confinement in no way determines which parole laws shall apply. Even if the petitioner had at any time been committed to a federal institution outside the District, by the terms of the 1947 amendment to the D.C.Code the Federal Parole Board is to have and exercise the same power and authority as the D. C. Board of Parole had the prisoner been committed to a District institution. Thus, the 1947 amendment may logically be construed to require the Federal Parole Board to apply D.C.Code provisions to prisoners in penal institutions other than in the

District of Columbia who have been convicted of violations of District laws, although we do not necessarily decide the point since not required to do so under the facts here presented.

Being unquestionably within the power of Congress to provide penalties for offenses against the United States committed within the District, it necessarily follows that it is also within the competence of Congress to impose separate parole and recommitment provisions and conditions upon such sentences. Crimes committed within the District are offenses against the government of the United States, but the laws enacted by Congress as special legislation applicable only to the District are not the general laws of the United States. See Story v. Rives, 1938, 68 App.D.C. 325, 97 F.2d 182. While the Act creating the District Board in 1932 granted it the authority of the former Section 4164, as then in effect, as a part of the general federal law, it does not follow that the special provision embodied in the 1947 D.C.Code amendment should conversely be treated as superseded or nullified by the provisions of Section 4164. The 1947 amendment appears to be but a special further power granted to the District alone and Section 4164, which treats conditionally released United States prisoners as parolees, is the very section which permits the effectuation of the 1947 amendment.

Petitioner cannot be heard to complain that persons convicted under the general federal law, or under the law of any other independent jurisdiction, have the advantage of different methods of computing the good conduct deduction upon recommitment for violating conditions of release. Just as each state may enact laws defining crimes and offenses committed within its borders and fixing punishment for violations thereof, so may Congress enact laws applicable to criminal offenses committed within the District of Columbia. The D.C.Code does not deny the right to good conduct deductions upon recommitment. While it does provide a separate method of computa-

tion for persons committing offenses within the District, this legislation was enacted especially for the District, made applicable to offenses within the District and binding upon the District Reformatory. It was effective before petitioner was released and did not impair or affect his right to a release. He was chargeable with knowledge that should he violate the conditions of his release, such violation would result in his commitment for a greater period than would have been the case prior to the 1947 amendment to the D.C.Code.

The habeas corpus petition was properly denied.

Affirmed.