**UNITED STATES of America,**
**Appellee,**

v.

**Tyrone HORTON, Appellant.**

**No. 13301.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 2, 1969.

Decided Feb. 27, 1970.

Certiorari Denied June 29, 1970.

See 90 S.Ct. 2266.

Richard R. G. Hobson, Fairfax, Va., court-appointed counsel, for appellant.

C. P. Montgomery, Jr., Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before SOBELOFF and WINTER, Circuit Judges, and HARVEY, District Judge.

HARVEY, District Judge:

Tyrone Horton was convicted by a jury in the United States District Court for the Eastern District of Virginia of assaulting a guard at the District of Columbia Reformatory located at Lorton, Virginia. At the time of the offense, Horton was serving a one-year sentence at Lorton for attempted unauthorized use of a motor vehicle. Following his assault conviction, he received an additional consecutive sentence of two years imprisonment.

In this appeal, Horton claims that he has been denied equal protection and due process of law under the Fifth Amendment because he was sentenced under general federal law rather than under provisions of the District of Columbia Code. Specifically, he contends that the sentence imposed denied him the right (1) to receive a minimum sentence and to be eligible for parole when the minimum sentence was served; (2) to have his minimum sentence reduced at any time by an application made by the Board of Parole to the Court; and (3) if granted parole, to be discharged from supervision by the Board of Parole prior to the expiration of the maximum term of his sentence. He claims that these are rights which are accorded persons tried and convicted in the District of Columbia of this same offense and which cannot constitutionally be denied

him merely because his trial occurred in the Eastern District of Virginia.

Horton was tried and convicted under § 22–505 of the D.C.Code (1967 Ed.), which punishes an assault upon an employee of a District of Columbia correctional institution whether the institution is located within the District or elsewhere. This statute provides for a maximum term of imprisonment of 5 years for an assault of the type with which Horton was charged. In United States v. Smith, 398 F.2d 595 (4th Cir. 1968), we recognized that a prosecution under § 22–505 for assaulting a guard at Lorton, Virginia, is properly brought in the Eastern District of Virginia, where the crime was committed.

Other provisions of the D.C.Code relating to sentencing and parole have not been made applicable by Congress to persons convicted outside the District of Columbia. The District Judge in this case could not have sentenced Horton under the provisions of § 24–203 [1] of the Code, which requires that the judge impose a maximum and minimum term for a person "convicted in the District of Columbia of a felony" and which further permits release of such a person on parole at any time after having served the minimum sentence. Horton contends that § 24–201c and § 24–204(b) likewise cannot be applied to him. Under § 24–201c,[2] the Board of Parole of the District of Columbia may in its discretion apply to the sentencing court for the reduction of a minimum sentence imposed on a prisoner who has been committed to the District's Department of Corrections, and under § 24–204(b) [3] the Board in its discretion may discharge a paroled prisoner from supervision prior to the expiration of the maximum term for which he was sentenced. Horton claims that his constitutional rights were infringed when he was denied the benefits accorded by these three statutory provisions to persons convicted in the District of Columbia of the same crime.[4]

---

1. § 24–203

"(a) Except as provided in subsections (b) and (c), in imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period not exceeding the maximum fixed by law, and for a minimum period not exceeding one-third of the maximum sentence imposed, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence. * * "

2. § 24–201c.

"When by reason of his training and response to the rehabilitation program of the Department of Corrections it appears to the Board that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, and that his immediate release is not incompatible with the welfare of society, but he has not served his minimum sentence, the Board in its discretion may apply to the court imposing sentence for a reduction of his minimum sentence. * * * "

3. § 24–204

"(b) Notwithstanding the provisions of subsection (a) of this section, the Board of Parole may, subject to the approval of the Board of Commissioners of the District of Columbia, promulgate rules and regulations under which the Board of Parole, in its discretion, may discharge a parolee from supervision prior to the expiration of the maximum term or terms for which he was sentenced."

4. Horton acknowledges that the Parole Board of the District of Columbia has jurisdiction over him because of his confinement at Lorton but claims that such Board must apply general federal law rather than provisions of the D.C. Code. Although § 24–203 of the D.C. Code by its terms applies only to persons convicted in a District of Columbia court, it is not at all clear that §§ 24–201c and 24–204(b) do not apply to Horton. See Howerton v. Rivers, 117 U.S.App.D.C. 110, 326 F.2d 653 (1963) and Gilstrap v. Clemmer, 284 F.2d 804 (4th Cir. 1960). However, as the government has not challenged appellant's position in this regard, we will assume for the purposes of this case

■ As to Horton's first contention, we find no essential difference between the sentencing alternatives available under general federal law to the sentencing judge sitting in this case in Virginia and those that he might have employed if sitting in the District of Columbia. By operation of 18 U.S.C. § 4202, Horton may be released on parole after serving one-third of his two-year term of imprisonment. The division of his sentence into maximum and minimum periods as required by the District of Columbia Code would therefore be of no practical advantage to him. Furthermore, the sentencing judge in his discretion could have employed the provisions of 18 U.S.C. § 4208(a) (1) and designated in the sentence imposed a minimum term at the expiration of which Horton would become eligible for parole, which term could be less than but not more than one-third of the maximum sentence imposed. He was also empowered to use § 4208(a) (2), fixing the maximum term and specifying that Horton might become eligible for parole at such time as the Board of Parole might determine. Horton's age would even have permitted the judge to sentence him under the Federal Youth Correction Act, 18 U.S.C. §§ 5005–5026, which also contains a provision permitting the offender to be unconditionally discharged before expiration of his maximum sentence. In view of these provisions of general federal law, we conclude that Horton's constitutional rights were not infringed because he was not sentenced under § 24–203 of the District of Columbia Code.

With reference to Horton's other two contentions, the government argues that whatever additional benefits might accrue to him under §§ 24–201c and 24–204(b) of the D.C.Code, the fact that he will be treated for parole purposes in the same manner as other federal prisoners not convicted in the District does not amount to a denial of his constitutional rights. It is urged that one convicted in the District of Columbia of a similar felony has no "right" to have the Board of Parole apply to the sentencing court for a reduction of sentence inasmuch as § 24–201c makes it discretionary with the Board whether such an application is made. It is further claimed that there is no "right" on the part of a paroled District of Columbia prisoner that the Board of Parole discharge him from supervision prior to the expiration of his maximum term, for again under § 24–204(b) such an act is within the Board's discretion.

■ Assuming that the benefits which might accrue to Horton under the more liberal District of Columbia provisions are indeed statutory rights, the short answer to Horton's contentions is that Congress undoubtedly may treat offenders convicted in the District of Columbia differently from those convicted elsewhere. Were this not so, any defendant convicted of a crime in a federal court elsewhere in the United States could successfully claim the right to have applied to him more beneficial provisions of law made applicable by Congress only to those similarly convicted in a District of Columbia court.

In Gilstrap v. Clemmer, 284 F.2d 804 (4th Cir. 1960), this Court recognized that Congress may adopt one rule of substantive criminal law for the District of Columbia while promulgating yet another for the general federal system, citing Johnson v. United States, 225 U.S. 405, 32 S.Ct. 748, 56 L.Ed. 1142 (1912) and Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.Ed. 993 (1949). In *Johnson*, a defendant convicted in the District of Columbia of murder challenged a difference between a provision of the D.C.Code making the death penalty mandatory and a similar provision of federal law providing that the jury in a murder case could qualify its verdict by adding the words "without capital punishment." In finding no constitutional infirmity, the Supreme Court said the

that these latter two sections of the D.C.Code would not control the Parole Board's handling of Horton's case but

that general federal law instead is applicable.

following at pages 417–418, 69 S.Ct. at page 752:

"The Codes are separate instruments, and no certain test can be deduced from pointing out particular likenesses or differences. But the effect of separation is important and necessarily had its purpose. The Codes had in the main special spheres of operation, and provisions accommodated to such spheres. There is certainly nothing anomalous in punishing the crime of murder differently in different jurisdictions. It is but the application of legislation to conditions. * * *

"Congress certainly, in enacting the District Code, recognized the expediency of separate provisions for the District of Columbia. It was said at the bar, and not denied, that the District Code was not only the work of the lawyers of the District, having in mind the needs of the District, but of its citizens as well, expressed through various organizations and bodies of them."

The *Johnson* case was followed in Griffin v. United States, *supra*, which was decided by the Supreme Court in 1949. There the challenge in another murder case was directed at a difference between a general federal rule concerning the admissibility of evidence and a rule applied solely in courts of the District of Columbia. The Supreme Court pointed out in its decision that Congress in its enactment of statutes had often recognized the appropriateness of one rule for the District of Columbia and another for other jurisdictions so far as they are subject to federal law. The opinion listed numerous disparities in matters of criminal law between the D. C.Code and federal statutes, including statutes dealing with adultery, rape, robbery, larceny and the competency of one spouse to testify for or against the other. See also Coleman v. United States, 118 U.S.App.D.C. 168, 334 F.2d 558 (1964).

As the Court said in Howerton v. Rivers, 117 U.S.App.D.C. 110, 326 F. 2d 653, 655 (1963), it would undoubtedly

have been more logical for Congress to prescribe uniformity in the parole treatment of all United States prisoners, but "Congress presumably can handle these varying situations in varying ways." The constitutional requirement of equal protection is not a demand that a statute necessarily apply equally to all persons. Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). With particular reference to convictions within the District of Columbia, Congress may constitutionally establish rules of criminal law that differ from those generally applicable in federal courts elsewhere. The powers of Congress over the District are in the nature of those of a state legislature because "[i]n many respects the District is an entity separate and apart from the general federal system * * *". Gilstrap v. Clemmer, *supra*, 284 F.2d at page 808. We therefore conclude that the differences in treatment after sentencing that may be accorded Horton under general federal law when compared to those benefits available to him had he been convicted in a District of Columbia court would not deny him equal protection or due process of law.

Affirmed.

SOBELOFF, Circuit Judge (concurring):

I concur in the judgment of the court affirming the conviction. The claimed violation of a right to a minimum sentence is without merit, as Judge Harvey's opinion points out. The remaining contentions, relating to the powers of the Parole Board to petition the court for a reduction of sentence and to discharge the prisoner completely from supervision, do not warrant reversal. However, I would not dispose of these arguments in the same way as the majority does in its opinion.

Appellant urges that the failure to extend various parole provisions of the D. C.Code to cover his case amounts to a denial of equal protection, requiring reversal. His is really a three-step argu-

ment that depends for its success upon all three steps. The argument runs as follows: (1) sections 24–201c and 24–204(b) do not apply to him; (2) since they do not, there is a constitutional deprivation; (3) accordingly, the conviction must be reversed.

Whatever the merit of the first two propositions, the third fails. For, even if we agreed with appellant as to (1) and (2), that the above *parole provisions* do not apply to him and that he is thereby denied equal protection, he would still stand validly *convicted*. One could terminate the discussion at this juncture. However, the questions raised by appellant—whether the statutory provisions apply to his case—may shortly become important to him as well as to other prisoners. Because these are not issues easily susceptible to judicial review, Bozell v. United States, 199 F.2d 449 (4th Cir. 1952, I deem it necessary at this time to make clear that the majority has not decided that the statutes are not applicable and to express my view that they most definitely are.

The majority decides this case by seizing on the second element of appellant's argument, the constitutional one. Avowedly, the prevailing opinion leaves open the first, the statutory, question, despite time-honored principles of judicial decision-making which dictate that statutory issues be resolved first in order not to reach constitutional issues needlessly. *See* United States v. Bradley, 418 F.2d 688 (4th Cir. 1969), and the authorities there gathered. I would decide the statutory issues and declare that sections 24–201c and 24–204(b) do apply to Horton.

In his vain effort to construct some claim of reversible error for the purpose of his present appeal, appellant has taken the anomalous position that the statutory provisions, sections 24–201c and 24–204(b), do not reach him. But we are not bound by the strategy he adopts in the present proceeding nor by the Government's acquiescence.

Sections 24–201c and 24–204(b), which grant powers to the Board of Parole "for the penal and correctional institutions of the District of Columbia," (§ 24–201a) would seem, without question, to apply to appellant who is confined in Lorton which beyond a doubt is a D.C. prison. Indeed, this is the basic premise of the present prosecution.

There is no indication of a congressional design to exclude Lorton prisoners convicted under section 22–505 from the ambit of the D.C. parole scheme. The 1965 revision of section 22–505 brought Lorton prisoners charged with assault on an officer under the coverage of the D.C. law with its five year maximum penalty. Previously, they were liable under the cognate general federal law which prescribes a maximum of three years. The purpose of the 1965 amendment to section 22–505 was to harmonize the treatment of all prisoners in custody of the District of Columbia, whether or not actually located within its territorial bounds. When Congress put Lorton prisoners under the D.C. law with the possibility of stiffer sentences than the court in the Eastern District of Virginia could impose under the general federal statute, it did not indicate that it meant to deny those prosecuted under the D.C. law the benefit of the accompanying possibility of leniency which is available to other District of Columbia prisoners.

If the court simply made it clear that the parole provisions apply, then the constitutional issue would evaporate. In light of the fact that Congress apparently did not contemplate a difference in treatment, I would not reach out to sustain its constitutionality. Such restraint is particularly appropriate where the constitutional proposition is not free from doubt.

Of course geographical factors may be sufficient to justify differences in treatment. Congress may, constitutionally, adopt differing substantive law to cover D.C. and general federal prisoners. But that is beside the point. Whether Congress could create still a third class of convicts—D.C. detainees incarcerated outside of D.C. who are liable to more severe penalties than either of the other

classes of prisoners—is, in my view, another question. Under the proposed rationale, Horton could receive general federal treatment for some aspects of his sentence, and D.C. treatment for others. There may be reasons to support such a bifurcated practice but geographical considerations by themselves cannot provide the basis. Alone, the geographical factors would seem to demand either one course or the other, not the hybrid.

In other words, I do not think that Congress, even if it clearly expressed an intention to do so, could be allowed to speak out of both sides of its mouth. If Congress relies on the fact of D.C. custody to justify harsher treatment than for general federal prisoners, then it must be held to that reliance. It cannot then turn around and utilize the fact of the extra-D.C. location of the prison to justify harsher treatment than for other D.C. prisoners. The hair must go with the hide.

For me this is a most difficult constitutional question and one which is readily avoidable. The better course would be to declare that the parole opportunities of the D.C.Code, sections 24–201c and 24–204(b), do apply to appellant.