Richard Charles RUIP, Appellant,

v.

UNITED STATES of America, Appellee.

No. 76–1505.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 14, 1976.

Decided April 8, 1977.

As Amended on Denial of Rehearing
June 16, 1977.

Richard C. Ruip, pro se, Richard A. Bernat, Cincinnati, Ohio (Court-appointed CJA), for appellant.

Frederick M. Coleman, U.S. Atty., John P. Berena, Cleveland, Ohio, Kevin Thornton, Euclid, Ohio, for appellee.

Before PHILLIPS, Chief Judge, and WEICK and LIVELY, Circuit Judges.

PHILLIPS, Chief Judge.

This appeal presents four issues:

1.) Whether the promulgation of parole guidelines by the United States Parole Commission violated the prohibition against ex post facto laws when applied retroactively;

2.) Whether the application of the parole guidelines to a prisoner sentenced before their issuance violated Rule 11 of the Federal Rules of Criminal Procedure;

3.) Whether due process of law required that a prisoner be allowed an opportunity to provide supplemental information to the Parole Commission regarding his "salient factor score"; and

4.) Whether a prisoner's sentence should have been vacated because the sentencing judge's expectations of parole eligibility were changed by the parole guidelines.

We conclude that the third issue is not properly before this Court. We answer the other three questions in the negative, and affirm the decision of district court.

I.

Appellant, Richard Charles Ruip, pled guilty to violation of 18 U.S.C. § 2113(a) and (d) for his participation in an armed bank robbery. On July 27, 1971, he was sentenced to eighteen years imprisonment pursuant to 18 U.S.C. § 4208(a)(2) and delivered to the custody of the Attorney General.

At the time appellant was sentenced all parole release decisions were made by members of the United States Board of Parole (Parole Commission),[1] with decisions based not on formally articulated criteria or policies, but on the discretionary judgment of the members of the Parole Commission. The primary focus in decision making was

---

1. The statute creating the United States Board of Parole has been repealed and the United States Parole Commission has been established to replace it. Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219 (March 15, 1976), codified in 18 U.S.C. §§ 4201–18, 5005 et seq. The term Parole Commission will be used throughout this opinion for the sake of clarity.

directed toward intuitive perceptions of institutional behavior and the probability of recidivism. Project, *Parole Release Decisionmaking and the Sentencing Process*, 84 Yale L.J. 810, 820 (1975) [Hereinafter cited as Project].

In 1973 the Parole Commission established a national parole policy and adopted parole guidelines[2] to promote what it felt was a more consistent and equitable exercise of its discretion. See 28 C.F.R. § 2.20 (1976). The guidelines indicate the customary range of time to be served before release for various combinations of offense severity and parole prognosis characteristics. Under the guidelines an inmate's record is examined to determine his "salient factor score." This figure was statistically designed to predict the potential risk of parole violation and consists of nine weighted personal characteristics such as prior convictions, employment history, etc. Project, *supra* at 824. Next, the inmates offensive behavior is classified on the "offense severity scale" in one of six categories from low to greatest. This rating reflects the Parole Commission's independent, subjective evaluation of the gravity of the inmate's criminal behavior. Project, *supra* at 823–24. Together, the salient factor score and the offense severity rating are used in conjunction with a table[3] to determine a suggested time range during which the inmate should remain incarcerated.[4]

The suggested time range is merely a guideline. Where circumstances warrant, decisions either above or below the guidelines may be rendered. 28 C.F.R. § 2.20(c) (1976). Nevertheless, experience indicates that the overwhelming majority of parole decisions fall within the guidelines. *United States v. Salerno*, 538 F.2d 1005, 1007 (3rd Cir. 1976); Project, *supra* at 825 n. 75.

During his incarceration, appellant established a good institutional record. He earned a high school equivalency (G.E.D.) diploma, accrued a number of credits on the college level and completed vocational courses in welding. Weighing against appellant, however, was the fact that the crime to which he had pled guilty in the present case occurred while he was on parole, and less than one year after he had served nine and one-half years for his part in a previous armed robbery.

Appellant had a hearing before the parole hearing examiner panel on October 20, 1975. The panel recommended that he be released on parole on January 20, 1976. This decision by the local panel was referred to the National Directors for reconsideration of the panel's decision, and on November 20, 1975, appellant was informed that his parole had been denied by the National Appellate Board and his imprisonment would continue until March 1977, at which time he would receive another review. The National Appellate Board gave the following reasons for denying petitioner's parole:

> Your offense behavior has been rated as greatest severity because shots were fired during commission of armed bank robbery. You have a salient factor score of 3. You have been in custody a total of 55 months. Guidelines established by the Board for adult cases which consider the above factors indicate a range of more than 65 months to be served before release for cases with good institutional program performance and adjustment. Board guidelines for greatest severity cases do not specify a maximum limit. Therefore, the decision in your case has been based in part upon a comparison of the relative severity of your offense behavior with offense behavior examples listed in the very high severity category.

Appellant challenged the denial of his parole in the district court by alternative

**2.** 38 Fed.Reg. 31,942 (1973).

**3.** 28 C.F.R. § 2.20 (1976).

**4.** To formulate the suggested time ranges in the guidelines, a research staff analyzed a retrospective sample of parole decisions to develop average ranges of time actually served before parole by offenders with various combinations of severity and salient factor ratings. Project, *supra* at 825.

motions for a writ of habeas corpus [5] or for vacation of sentence.[6] The motions were denied and appellant seeks relief in this court.

### II.

The Constitution of the United States specifies that "No Bill of Attainder or ex post facto Law shall be passed." art. I, § 9, cl. 3. A law falls within the prohibition on ex post facto laws if, it, "makes an action done before the passing of the law, and which was innocent when done, criminal; [or] . . . changes the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed." *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798).

Appellant contends that the Parole Commission guidelines operated as an ex post facto law in delaying his release on parole. In the absence of these guidelines, appellant asserts, he would have been released on parole on January 20, 1976, due to his superior institutional adjustment. The effect of these administrative guidelines, he insists, was to change the rules and lengthen his incarceration, thereby imposing a greater punishment for his crime. This administrative action, appellant asserts, was invalid as an ex post facto law.

Appellant's contention raises two questions: 1) whether the eligibility of convicted persons for parole is a part of "the law annexed to the crime when committed" under *Calder v. Bull, supra,* 3 U.S. (3 Dall.) at 390; and 2) whether administrative guidelines on parole come within the prohibition on ex post facto laws.

In determining whether parole eligibility is a part of the law annexed to the crime, when committed, we first look to the statute prescribing the offense to which appellant pled guilty:

**5.** 28 U.S.C.A. § 2241 (1976).

**6.** 28 U.S.C.A. § 2255 (1976). No issue is raised on the present appeal as to whether the District Court had jurisdiction under § 2255. There is a conflict among the Circuits on this issue. *Compare United States v. DiRusso,* 535 F.2d 673 (1st Cir. 1976) and *Kortness v. United*

*§ 2113. Bank robbery and incidental crimes*

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;

\* \* \* \* \* \*

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\* \* \* \* \* \*

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both. 18 U.S.C.A. § 2113 (1970 & Supp. 1976)

Entirely different statutes apply in determining parole eligibility. District Judge Thomas D. Lambros noted in his opinion in this case:

At the time of sentencing, a district judge has three sentencing alternatives in terms of parole release. Under 18 U.S.C. § 4202, the judge may require a defendant to serve one-third of the sentence imposed before becoming eligible for parole release. Under 18 U.S.C. § 4208(a)(1), the judge may set a minimum period of incarceration to be served before the defendant is eligible for parole, not to exceed one-third of the sentence imposed. Last, under 18 U.S.C. § 4208(a)(2), a sentencing judge may leave the matter of parole solely up to

*States,* 514 F.2d 167 (8th Cir. 1975). This court reserves a decision on this question. Our opinion in this case is not intended to be a precedent for the proposition that decisions of the United States Parole Commission can be reviewed by a motion to vacate under § 2255.

the board of parole, with no minimum time required.[7]

■ Although the parole provisions are set forth in a statute separate and apart from the bank robbery statutes, the courts have come to regard parole eligibility as an integral part of a sentence. Additionally, "only an unusual prisoner could be expected to think he was not suffering a penalty when he was denied eligibility for parole." *Warden v. Marrero,* 417 U.S. 653, 662, 94 S.Ct. 2532, 2538, 41 L.Ed.2d 383 (1974). In any practical analysis, parole consideration is a part of the law annexed to the crime. The Ninth Circuit decision in *Love v. Fitzharris,* 460 F.2d 382, 384 (9th Cir. 1972), *vacated as moot,* 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973), holding that under California law parole eligibility is a part of the sentence and thus a part of the law annexed to the crime, is in accordance with this view.

■ The next question is whether, under the circumstances of this case, administrative guidelines on parole come within the prohibition against ex post facto laws. The Parole Commission and its predecessor, the Board of Parole, are independent bodies established by Congress, whose members are appointed by the President. The Board of Parole during its existence had absolute discretion in matters of parole and the courts were without the power to grant a parole or to determine eligibility for parole.

The very broad discretion vested in the Board of Parole by Congress carried with it authority to establish such guidelines as would best effectuate the purpose of Congress in establishing the Board and the parole system. *See* Act of Aug. 25, 1958, Pub.L. No. 85–752, § 3, 72 Stat. 845; *Earnest v. Moseley,* 426 F.2d 466, 469 (10th Cir. 1970). Congress expressly conferred this power to promulgate guidelines upon the newly created Parole Commission. Parole Commission and Reorganization Act, Pub.L. No. 94–233, § 4203, 90 Stat. 220 (March 15, 1976), codified in 18 U.S.C. § 4203.

The Ninth Circuit held in *Love v. Fitzharris, supra,* 460 F.2d 382, that a change in an agency interpretation of statutes, which absent a court pronouncement on the matter, had the force and effect of law, could violate the prohibition on ex post facto laws.[8]

*Love* is inapposite because what is involved in this case is not agency interpretation of law but an agency's setting up guidelines for itself to assure the uniform execution of its business. These guidelines are not law, but guideposts which assist the Parole Commission (and which assisted the Board of Parole) in exercising its discretion. Nor do these guidelines have the characteristics of law. They are not fixed and rigid, but are flexible. The Commission remains free to make parole decisions outside of these guidelines. We, therefore, conclude that *Love* does not support the contention of appellant.

In *Warden v. Marrero, supra,* 417 U.S. at 663, 94 S.Ct. at 2538, the Supreme Court warned that "a repealer of parole eligibility previously available to imprisoned offenders

---

7. The statutes regarding sentencing and parole alternatives have been changed since Judge Lambros wrote this opinion. Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219 (March 15, 1976).

8. At the time Love began serving his sentence the California Department of Corrections took the position that where consecutive sentences had been imposed, California Penal Code § 3049 applied and a prisoner could be paroled after the expiration of one-third of his minimum sentence. Under this interpretation, Love, who was serving consecutive sentences for two violations of the narcotics laws, each violation carrying a minimum term of five years imprisonment, would have been eligible for parole in three years and four months. However, the Department subsequently reinterpreted the parole eligibility statutes with respect to consecutively sentenced narcotics offenders and concluded that persons serving consecutive sentences would be eligible only after serving two and one-half years imprisonment on each consecutive violation. The Department then notified Love that he would be eligible for parole in five years not the three years four months determined earlier. The District Court concluded, *Love v. Fitzharris,* 311 F.Supp. 702 (N.D.Cal.1972), and the Ninth Circuit affirmed, that this action violated the prohibition on ex post facto laws.

would clearly present [a] serious question under the ex post facto clause of . . . the Constitution. . . ." The Court in *Marrero* was presented with the statutory effect of Congressional enactments affecting parole eligibility. Since the relevant provisions were statutes, there was no question that they were encompassed in the prohibition on ex post facto laws. The situation here is different. As emphasized above, the provisions here are merely administrative guidelines, adopted by the Parole Commission (and the Board of Parole) to assist it in attaining a more uniform exercise of its discretion.

### III.

■ At the time of the sentencing of Ruip, Rule 11 of the Federal Rules of Criminal Procedure as amended in 1966, provided in part as follows:

> The court may refuse to accept a plea of guilty, and shall not accept such a plea . . . without first . . . determining that the plea is made voluntarily with understanding of the nature of the charge and *the consequence of the plea.* (Emphasis added)

This quoted language was omitted in the 1975 amendments to Rule 11.[9]

Appellant contends that ineligibility for parole is a consequence of a guilty plea within the meaning of Rule 11 as it existed prior to the 1975 amendment, and, therefore, was required to be made known to a defendant before the court could accept his plea. Appellant insists that he was led to believe that satisfactory institutional achievement would expedite his release on parole. The subsequent promulgation of the parole guidelines by the Parole Commission changed this policy to his detriment and, he asserts, since he did not have a complete understanding of the consequences of his plea, the voluntariness of his guilty plea has been vitiated.

---

9. Rule 11(c)(1), added by the 1975 amendment, requires that the district court must inform the defendant, and determine that he understands, among other things, the following:

In the present case the parole decision regarding the appellant remains within the discretion of the Parole Commission, a fact of which appellant presumably was aware at the time of his guilty plea. The promulgation of the parole guidelines did not severely limit or preclude the exercise of discretion by the Parole Commission. The guidelines merely promoted a more consistent and equitable exercise of discretion in parole-making decisions. Upon the facts of this case we conclude that the application of the parole guidelines to appellant did not violate Fed.R.Crim.P. 11.

### IV.

Appellant contends that the fifth amendment's due process protection extends to parole release hearings and that he should have been given a meaningful review and an opportunity to provide supplemental information to the Parole Commission before a decision to deny him parole was reached. In particular, appellant challenges the determination of his salient factor score alleging that he was not awarded a point for the high school equivalency diploma (G.E.D.) he earned while incarcerated, and that he was not awarded a point because his crime did not involve auto theft. See 28 C.F.R. § 2.20 (1976).

Appellant asserts that minimum due process is required under *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), because the denial of parole represents an immediate threat to his liberty. If parole is granted, he continues, he is conditionally free, while if denied, his incarceration continues. Whether to extend due process to situations where, unlike parole revocation hearings, the defendant is not yet at liberty has created a conflict among

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;
. . . . .

the circuits.[10] The Supreme Court granted certiorari to address this conflict, but the case became moot before the issue was resolved. *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (Vacating as moot the Fourth Circuit decision holding that due process applies to parole denial proceedings).

We find it unnecessary to decide this issue in the present case. While appellant requests a due process hearing on the determination of his salient factor score, his offense was rated "greatest severity" and under the guidelines his salient factor score was not determinative of the time he would be incarcerated. Further, appellant did not challenge the validity of his salient factor score in the District Court. Since this issue was not raised in the District Court, we do not consider the question of whether due process required the Parole Commission to allow appellant to contest his salient factor score to be properly before us. *Bannert v. American Can Co., Inc.,* 525 F.2d 104 (6th Cir. 1975), *cert. denied,* 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976); *Dupes v. Johnson,* 353 F.2d 103 (6th Cir. 1965).

## V.

Appellant was sentenced to eighteen years imprisonment in July 1971, more than two years before the parole guidelines appeared in the Federal Register. 38 Fed. Reg. 31,942 (1973). The District Judge sentenced appellant under a statute in effect at that time, 18 U.S.C. § 4208(a)(2) (1969),[11] which provided that a prisoner could be eligible for parole at such time as the Parole Commission determined. Appellant now contends that the sentencing judge could not have been aware that issuance of the parole guidelines would effectively extend the period of his incarceration beyond what the judge had contemplated at the time of sentencing. As a result, appellant concludes, his case should be remanded to Judge Lambros, the sentencing judge, so that the judge may exercise his discretion on whether to modify the sentence in view of these new parole guidelines.

Three circuits have considered this problem and ordered resentencing out of concern for the effect of the guidelines on the sentencing process. *United States v. Salerno,* 538 F.2d 1005 (3rd Cir. 1976); *Kortness v. United States,* 514 F.2d 167 (8th Cir. 1975); *United States v. Slutsky,* 514 F.2d 1222 (2d Cir. 1975); As the Second Circuit observed:

> The judge who sentences a prisoner under § 4208(a)(2) ordinarily contemplates that, at an appropriate time before the one-third point in the sentence, the Parole Board will exercise a meaningful judgment upon, *i. e.,* give "serious consideration" to, the question of whether the prisoner should be paroled before the one-third point. [*Garafola v. Benson*], 505 F.2d [1212] at 1217–18 (footnote omitted).

> Since in all probability the appellants will not receive the parole treatment envisioned by the sentencing judge, there should be an opportunity for reconsideration in light of all recent developments in the area. *United States v. Slutsky, supra* at 1229.

10. *See e. g., Brown v. Lundgren,* 528 F.2d 1050 (5th Cir. 1976), *cert. denied,* 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976) (Due process does not apply to parole eligibility process); *Childs v. United States Board of Parole,* 167 U.S.App.D.C. 268, 511 F.2d 1270 (1974) (Due Process does apply to parole eligibility process).

11. 18 U.S.C. § 4208(a) stated:
§ *4208. Fixing eligibility for parole at time of sentencing*
    (a) Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interests of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than, but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.
Repealed by Parole Commission and Reorganization Act, Pub.L. No. 94–233, 90 Stat. 219 (March 15, 1976).

It may be that under ordinary circumstances, since appellant was sentenced pursuant to 4208(a)(2), his sentence would be vacated and his case remanded to the sentencing judge for reconsideration of the sentence in light of the parole guidelines. However, appellant was scheduled to be considered for parole by the Parole Commission in March 1977, at which time appellant would have already served the time suggested by the parole guidelines. In view of the fact that the parole guidelines will thus have a de minimus effect on appellant in the future and that a remand might hamper his parole consideration, appellant's sentence will not be vacated in the present case.

The decision of the District Court is affirmed.

### ORDER DENYING PETITION FOR REHEARING.

Richard Charles Ruip has filed a petition for rehearing requesting that his sentence be vacated and the case be remanded to the sentencing court for reconsideration of the sentence in the light of the parole guidelines. Appellant states that the United States Parole Commission has continued his case for a review hearing in February 1979. He relies upon the last paragraph of this court's opinion dated April 8, 1977, as authority for sustaining his petition, in view of the fact that the Commission has not granted him parole.

Appellant misconstrues the language of the opinion, which dealt with the effect of the parole guidelines. We pointed out that, as of March 1977, appellant already had served the time suggested by the parole guidelines and that the guidelines will have a de minimus effect upon appellant in the future. Therefore, this is not an appropriate case for vacating the sentence and remanding to the sentencing court for reconsideration of the sentence in the light of the guidelines.

Accordingly, it is ORDERED that the petition for rehearing be and hereby is denied.