787 F.2d 592
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MELVIN PERSKY, Petitioner-Appellant,
vs.
CALVIN EDWARDS, Respondent,
UNITED STATES PAROLE COMMISSION, Respondent-Appellee.
 85-1125, 85-1160
 United States Court of Appeals, Sixth Circuit.
 3/26/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: ENGEL, CONTIE and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner Melvin Persky appeals from a judgment of the district court denying Persky's petition for a writ of habeas corpus. Persky contends that his parole had been revoked pursuant to a U.S. Parole Commission guideline, 28 C.F.R. Sec. 2.47(d)(2), and that such guideline constituted an ex post facto law in violation of the U. S. Constitution. For the reasons that follow, we affirm.
 
 I.
 
 2
 Petitioner Melvin Persky was convicted of mail fraud in federal court in 1975, sentenced to eight years imprisonment, and paroled on February 9, 1977 with 2,330 days remaining on his sentence. On November 13, 1979, a warrant for Persky's arrest was issued due to Persky's unauthorized association with a known criminal, association with per ons involved in criminal activity, and participation in a conspiracy to defraud. On November 16, Persky was arrested and committed to USM Detroit. A revocation hearing was held on December 20, 1979, in which it was determined that Persky had 43 months to serve on his term, and that Persky, by his own admission, had associated, without authorization, with a known criminal. The examiner recommended revocation of parole, crediting of time spent on parole, and presumptive re-parole on August 15, 1980. This recommendation was accepted and, on January 21, 1980, Persky was informed of this fact. On February 16, 1980, petitioner was committed to the U.S. Penitentiary at Terre Haute, Indiana.
 
 
 3
 A certificate of parole was issued on July 22, 1980, placing petitioner on parole within the Eastern District of Michigan from August 15, 1980 to June 28, 1983. On March 20, 1981, James Marsh, U.S. Probation Officer, wrote to Richard Mulcione, Regional Director of the U.S. Parole Commission, that on December 2, 1980, petitioner had been indicted by a federal grand jury and charged with mail fraud. On January 9, 1981, Persky pleaded guilty to violation of 18 U.S.C. Sec. 1341, and, on March 20, 1981 was sentenced to five years custody and a $1,000 fine. On July 3, 1980, Persky had been arrested by the Washtenaw County Sheriff's Department and charged with receiving and concealing stolen property over $100, obtaining money under false pretenses over $100, and unlawfully driving away an automobile. On January 13, 1981, Persky pleaded guilty to the first two offenses and the third was dismissed. Marsh further explained, '[w]e are not requesting a Parole Violation Warrant for Mr. Persky as these offenses occurred prior to being released on parole and, therefore, Mr. Persky has not violated his parole during his most recent release. Due to his current Federal incarceration, we will place his case on Inactive supervision.' Persky subsequently received sentences on his state offenses of 40 months to five years, and five to ten years. A warrant for arrest due to parole violation was issued on May 14, 1981 based on the state offenses and supplemented on July 22, 1981, with respect to the federal mail fraud conviction.
 
 
 4
 A detainer action letter to Gary Laskey of the Parole Commission in Kansas City indicates '[a] detainer has been filed against this subject in your favor charging Parole Violation (owes balance of 1,047 days). Release is tentatively scheduled for Rec'd 5 years (Pending Computation).' A hearing was held on September 22, 1981 in which it was determined that Persky's recommended release date would be after service of 70 months. The panel recommended revocation of parole, that the violator term commence upon petitioner's release from his new federal sentence, and that incarceration continue to the expiration of the combined new sentence-violator term. The panel's reasoning indicates that the panel assumed that the terms would run consecutively rather than concurrently. On October 8, 1981, petitioner was informed of the action. Persky appealed, and, on December 2, 1981, the decision was affirmed by the Regional Commissioner. Petitioner did not appeal this decision to the National Appeals Board as provided by 28 C.F.R. Sec. 2.26.
 
 
 5
 On March 28, 1984, petitioner, pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2241. Petitioner alleged that the U.S. Parole Commission acted arbitrarily, capriciously, and abused its discretion in ordering petitioner to serve his parole violator term consecutive to his new sentence. Petitioner alleged that on April 9, 1982, he was sentenced to five years in custody concurrent to his five-year term which commenced March 20, 1981. Petitioner claimed that, when the two five year sentences were combined, due to the approximately one-year interval, he would serve six years, twenty days before his parole violator term of 35 months commenced. Petitioner argued that 28 C.F.R. Sec. 2.44(a), Sec. 2.46, Sec. 2.52(c)(2), require that the violator term commence upon execution of the warrant and that his 35-month violator term would expire prior to expiration of his new sentence. Petitioner alleged that 'there is no provision in U.S. Parole Commission rules and regulations for ordering consecutive service or delaying service of the violator term in the case of a prisoner confined in a federal institution for a new sentence.' Petitioner alleged that the court had jurisdiction to review the Commission's acts pursuant to the Administrative Procedures Act.
 
 
 6
 On March 28, 1984, the district court ordered a responsive pleading, and, on May 24, 1984, such was filed, alleging that petitioner had failed to exhaust his administrative remedies by deliberately bypassing his right to appeal his parole revocation to the National Appeals Council, and that the parole violator warrant had been lodged as a detainer and not yet executed, and, therefore, petitioner's violator term had not yet commenced.
 
 
 7
 On June 5, petitioner moved to strike the response of the United States and/or for a more definite statement, claiming that such response was filed late. On June 5, the United States sought leave to file its response late. On August 8, 1984, petitioner responded, claiming that he never received a copy of the denial of his appeal due to his transfer from institution to institution, and that he never saw the decision of the Regional Commissioner until the response of the United States in this case. Persky further alleged that the Commission had applied a 1983 regulation retroactively to an original 1975 conviction, and, that such violated the 'Ex Post Facto Law,' and 1 U.S.C. Sec. 109. In the response, petitioner specifically argued that 'attempted use of rules, regulating [sic], and statues [sic] that has been amended in 1982 and/or 1983 editions by the United States Parole Commission, and which place additional burdensome liability on petitioner is a clear violation of the Ex Post Facto Law, and violates the constitutional laws of the United States.'
 
 
 8
 On December 21, 1984, the district court denied the petition, rejecting the United States' argument that petitioner had deliberately bypassed his administrative remedies. The district court scrutinized the Commission's action for arbitrary or capricious action or abuse of discretion and, denying the petition, concluded:
 
 
 9
 The decision whether or not to execute a parole violator warrant, which is standing as a detainer, is a difficult decision which is often made at the end of Petitioner's new sentence. . . . By allowing the parole violator warrant/detainer to stand until the end of the parolee's current sentence, the parole official will be in a better position to determine whether or not to execute the detainer.
 
 
 10
 Petitioner moved for reconsideration, apparently pursuant to Fed. R. Civ. P. 60(b), on January 21, 1985, and, on February 5, 1985, the district court denied the motion. The district court held:
 
 
 11
 None of Petitioner's pleadings raised an ex post facto claim. This Court does take note of the fact that the United States Parole Commission's adoption of rules and regulations to structure the exercise of its discretion with regard to parole revocation does not come within the scope of the ex post facto clause.[1]
 
 II.
 
 12
 It is clear that at the time of petitioner's conviction in 1975, there was no regulation with respect to the running of subsequent sentences and parole violator terms, although the government alleges that the general practice was to run such sentences consecutively. In 1976, 18 U.S.C. Sec. 4210(b)(2) was enacted which provided:
 
 
 13
 [I]n the case of a parolee who has been convicted of a Federal, State, or local crime committed subsequent to his release on parole, and such crime is punishable by a term of imprisonment, detention or incarceration in any penal facility, the Commission shall determine, in accordance with the provisions of section 4214(b) or (c), whether all or any part of the unexpired term being served at the time of parole shall run concurrently or consecutively with the sentence imposed for the new offense, but in no case shall such service together with such time as the parolee has previously served in connection with the offense for which he was
 
 
 14
 In Ruip v. United States, 555 F.2d 1331 (6th Cir. 1977), we concluded that while 'parole consideration is a part of the law annexed to the crime,' 'administrative guidelines on parole [do not] come within the prohibition against ex post facto laws.' Id. at 1335. We noted:
 
 
 15
 [W]hat is involved in this case is not agency interpretation of law but an agency's setting up guidelines for itself to assume the uniform execution of its business. These guidelines are not law, but guideposts which assist the Parole Commission (and which assisted the Board of Parole) in exercising its discretion. Nor do these guidelines have the characteristics of law. They are not fixed and rigid, but are flexible. The Commission remains free to make parole decisions outside of these guidelines.
 
 
 16
 Id. This approach has been approved by several other circuits. Inglese v. United States Parole Commission, 768 F.2d 932, 935-36 (7th Cir. 1985); DiNapoli v. Northeast Regional Parole Commission, 764 F.2d 143, 146 (2d Cir.), cert. denied, 106 S. Ct. 568 (1985); Dufresne v. Baer, 744 F.2d 1543, 1550 (11th Cir. 1984), cert. denied, 106 S. Ct. 61 (1985); Rifai v. United States Parole Commission, 586 F.2d 695, 698 (9th Cir. 1978); Wilson v. United States Parole Commission, 460 F. Supp. 73, 77 (D. Minn. 1978). See Stroud v. United States Parole Commission, 668 F.2d 843, 847 (5th Cir. 1982). In Portley v. Grossman, 444 U.S. 1311 (1980), Justice Rehnquist, acting as Circuit Justice, refused to stay the circuit court's mandate in holding that the ex post facto clause was not violated by application of 1978 guidelines to a parole violator who had been sentenced in 1972 when different guidelines were in effect. Justice Rehnquist wrote:
 
 
 17
 The guidelines operate only to provide a framework for the Commission's exercise of its statutory discretion. The terms of the sentence originally imposed have in no way been altered. Applicant cannot be held in confinement beyond the term imposed by the judge, and at the time of his sentence he knew that parole violations would put him at risk of serving the balance of his sentence in federal custody. The guidelines, therefore, neither deprive applicant of any pre-existing right nor enhance the punishment imposed. The change in guidelines assisting the Commission in the exercise of its discretion is in the nature of a procedural change found permissible in Dobbert.
 
 
 18
 Id. at 1312-13. This determination is consistent with our decision in Ruip. Only the Third Circuit has reached a contrary result, United States ex rel. Forman v. McCall, 709 F.2d 852, 859 (3d Cir. 1983), and admitted that Ruip may have been correct on its facts, id. at 860 n.18, noting that in Ruip, as in the pending case, petitioner was sentenced at a time when no parole guidelines were in effect, and, therefore, had no expectation regarding any particular parole system. See United States ex rel. Forman v. McCall, 776 F.2d 1156 (3d Cir. 1985). This analysis disposes of the pending case, since petitioner had committed his crime before any guidelines were promulgated.
 
 
 19
 Petitioner's argument focuses on the 18-month provision of the 1980 regulations, despite the fact that '[i]t is a fundamental principle of ex post facto jurisprudence that a court entertaining an ex post facto claim must focus upon the law in effect at the time of the offense for which a person is being punished.' Forman, 709 F.2d at 856. Since the 1980 regulation was not in effect at the time of the offense resulting in the 1975 conviction, it is clear that petitioner cannot claim the benefit of the 1980 regulation in the ex post facto context. As the government points out, the appropriate reference points are the date of the offense and the date of the parole revocation hearing.
 
 
 20
 Since it is clear that the guidelines at issue in this case are not 'laws' comprehended by the Constitution's prohibition on ex post facto laws and that Persky received no increase in punishment due to any change in the parole policy since his conviction in 1975, Persky's contention that his imprisonment violates the Constitution is without merit.
 
 
 21
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 22
 CONTIE, Circuit Judge, dissenting.
 
 
 23
 Although I might agree with much of the analysis of the court with respect to the substantive issue in this case, I believe that respect for the administrative remedies provided by Congress, and the impropriety of reaching constitutional questions when such may be avoided, counsel against resolution of the merits in this case. Because I believe that petitioner's failure to seek review before the National Appeal Board pursuant to 18 U.S.C. Sec. 4215(a) constitutes a failure to exhaust administrative remedies, I dissent, and would reverse and remand the case to the district court to hold in abeyance pending exhaustion of administrative remedies. See Gusik v. Schilder, 340 U.S. 128, 131-32 (1950), rev'g, 180 F.2d 662 (6th Cir. 1950); Little v. Hopkins, 638 F.2d 953, 954 (6th Cir. 1981); Seepe v. Department of the Navy, 518 F.2d 760 (6th Cir. 1975); Six v. United States Parole Commission, 502 F. Supp. 446, 448 (E.D. Mich. 1980).
 
 
 
 [1]
 The district court failed to address the ex post facto claim in the December 21 opinion, and, on February 5, concluded, on reconsideration that '[n]one of Petitioner's pleadings raised an ex post facto claim.' The government does not claim that the record supports the conclusion of the district court that the ex post facto claim was never raised, but argues that Persky's failure to raise the issue in his petition bars consideration of such. Smith v. United States Parole Commission, 752 F.2d 1056 (5th Cir. 1985), cited by the government, is distinguishable in that there is no evidence in that case that the ex post facto claim was raised prior to appeal. Persky's pleading filed August 8, 1984, discussed above, clearly raised the ex post facto claim. Accordingly, we address Persky's claim