Michael COSGROVE, et al., Plaintiffs,

v.

Richard L. THORNBURGH, et al., Defendants.

Civ. A. No. 80–0516.

United States District Court, District of Columbia.

Dec. 30, 1988.

John L. Pottenger, Jr., Jerome N. Frank Legal Services Organization, New Haven, Conn., for plaintiffs.

Mark E. Nagle, Asst. U.S. Atty., Washington, D.C., for Federal defendants.

William W. Nooter, Asst. Corp. Counsel, D.C., Washington, D.C., for Dist. of Columbia defendants.

## MEMORANDUM OPINION

NORMA HOLLOWAY JOHNSON, District Judge.

Male inmates of federal Bureau of Prison institutions who were convicted of District of Columbia Code violations in either the United States District Court for the District of Columbia or the Superior Court of the District of Columbia bring this class action to challenge the use of federal suitability guidelines in parole determinations. The case is presently before the Court on the motion of plaintiffs for summary judgment and the motions of the federal and District of Columbia defendants to dismiss.

### BACKGROUND

This case has a long history. Initially, the defendants' motion for summary judgment was granted on March 31, 1981. The motion was granted on the grounds that the U.S. Commission had plenary authority over D.C.Code offenders in its custody and that plaintiffs had not been denied equal protection because the federal and local parole criteria were substantially similar. Upon appeal, the judgment was reversed and remanded on January 11, 1983. *Cosgrove v. Smith*, 697 F.2d 1125 (D.C.Cir. 1983). On remand, the Circuit Court directed that the following issues be considered: 1) whether there is a substantial difference in parole suitability determinations under the federal and District of Columbia guide-lines; 2) whether the U.S. Commission has legitimate interests in applying federal parole standards to D.C.Code offenders; and 3) the factual predicates underlying the constitutional claim.

The class members, all D.C.Code offenders, have been designated to Bureau of Prison ("BOP") institutions by the Attorney General for a number of reasons including, but not limited to, overcrowding of District of Columbia facilities, protective custody, and upon recommendation of sentencing judges. As a result, these offenders have been subject to the parole guidelines of the United States Parole Commission ("U.S. Commission") rather than those of the District of Columbia Board of Parole ("D.C. Board").

Plaintiffs challenge the utilization of federal law and guidelines in making parole determinations with respect to them and contend that District of Columbia Code § 24–209 mandates that the U.S. Commission apply District of Columbia regulations and guidelines. Plaintiffs also contend that they are being denied equal protection of the law in that male D.C.Code offenders housed in facilities of the District of Columbia Department of Corrections ("DCDC") and all female D.C.Code offenders, though housed in federal facilities, benefit from parole review by the D.C. Board.[1]

Federal defendants deny that § 24–209 can be so construed and argue that the statute does not require the U.S. Commission to apply D.C. parole rules as the statute grants it plenary authority over the class members permitting the use of its own guidelines.

The parties have chosen to proceed at this juncture on the statutory construction issue only. Although the federal defendants denominated their motion as one to dismiss, they agree to have it treated as a cross-motion for summary judgment. The motion of the District of Columbia defendants to dismiss should be denied and will be by separate order.

---

1. Female offenders are provided this option because of a joint agreement between the BOP and the DCDC permitting female offenders to elect between federal and D.C. law for parole consideration. *See Garnes v. Taylor,* Civ. No. 159–72 (D.D.C. Dec. 10, 1976).

There are several questions of import not at issue which should be immediately stated. First, federal defendants admit that D.C. *parole statutes* are to be applied to D.C.Code offenders housed in federal institutions. Moreover, the U.S. Commission admits that it must evaluate these inmates for sentence reduction pursuant to D.C. Code § 24–201c and comply with the statutory criteria found in § 24–204. Thus, *parole eligibility* is not at issue. Second, there is no issue with respect to the power of the Attorney General to commit persons convicted of violations of the criminal laws of the District of Columbia to correctional and penal facilities of the BOP or the DCDC. Third, when D.C.Code offenders are committed to BOP facilities, D.C.Code § 24–209 authorizes the U.S. Commission to make parole decisions.

The critical issue on the cross-motions for summary judgment is whether D.C. Code § 24–209 requires the U.S. Commission to apply not only District of Columbia parole laws but also its regulations and guidelines in making parole determinations for male D.C.Code offenders housed in federal prisons.

## POSITIONS OF THE PARTIES

Plaintiffs, in moving for summary judgment, contend that the plain language of the statute requires adherence to the D.C. guidelines as well as its laws. In using the term "same power", plaintiffs argue, Congress meant the Commission to apply *all* of the rules used by the Board.

They point to the legislative history of the section which, it is maintained, expresses Congress' desire to create a model parole system in the District of Columbia, and that in extending to the U.S. Commission the power to parole D.C.Code offenders in its custody, Congress meant to have this progressive parole system applied in its entirety. According to plaintiffs, the legislative history "reveals that Congress fully intended § 209 to ensure that the federal authorities parole D.C. offenders where they had otherwise refused to do so, and to do so in accordance with the standards given by District law." Plaintiffs' Motion for Summary Judgment at 29.

Additionally, plaintiffs rely on a series of cases which have discussed the issue presently under consideration. They argue that the United States Court of Appeals for the District of Columbia and the Courts of Appeals for the Second, Seventh, and Eighth Circuits have all found that the statute in question requires the Commission to apply *all* of the Board's rules and regulations when determining the appropriateness of parole for D.C.Code offenders housed in federal facilities.

Finally, plaintiffs stress the differences in philosophies and procedures between the D.C. and U.S. parole statutes and guidelines. It is their position that the D.C. guidelines serve to implement the more progressive D.C. parole statutes, which emphasize rehabilitation, while the federal guidelines are primarily punishment-focused. Plaintiffs further contend that when the D.C. guidelines were finally promulgated and became effective on March 4, 1985, the D.C. Board "explicitly considered—and rejected—the federal parole guidelines as a model." Plaintiff's Motion for Summary Judgment at 9.

In contrast, the distinction between eligibility and suitability for parole is central to the defendants' position in this case. The former is established by the sentencing court and defines the limits of the inmates' possibility of parole. The latter is a decision made by the parole authority as to whether an inmate who is eligible, or has come up for parole review, is suitable for parole. Eligibility is determined according to statute and suitability is decided primarily by either guidelines or regulations promulgated by the paroling authority pursuant to statute.[2] Federal defendants note that parole suitability determinations are made

---

**2.** The suitability statute in the District of Columbia is found at is D.C.Code § 24–204(a), which provides in pertinent part:

[w]henever it shall appear ... that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law [and] that his release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoner on parole.

according to guidelines and not pursuant to statutes enacted by Congress. As such, they maintain that they should be free to use their own guidelines to render suitability determinations.

Federal defendants offer several arguments in support of this position. First, they maintain that the term "power and authority *vested*" as it appears in D.C. Code § 24–209, means only that power specifically granted by Congress. As the guidelines are promulgated by the D.C. Board and not by Congress, these guidelines, argue defendants, are not power "vested" in the Commission by Congress. Thus, the guidelines were not part of the "power and authority" to which Congress referred in the statute.

Secondly, defendants maintain that the guidelines are merely policy statements and not substantive rules as defined by the Supreme Court in *Chrysler Corp. v. Brown*, 441 U.S. 281, 301–03, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979). As such, they do not carry the force of law and are not part of the "power and authority" vested in the Board.

Finally, federal defendants argue that even if the Court finds that § 24–209 mandates application of the D.C. guidelines, they should still be permitted to use their own. Because the sets of guidelines are substantially similar, they contend, there is no reason to apply the D.C. version when the federal guidelines are so much alike.

DISCUSSION

*I. The Statute*

The statute at issue, D.C.Code § 24–209, provides:

The Board of Parole [U.S. Parole Commission] created by § 723a of Title 18, United States Code, shall have and exercise the same power and authority over prisoners convicted in the District of Columbia of crimes against the United States or now or hereafter confined in any United States penitentiary or prison (other than the penal institutions of the District of Columbia) as is vested in the District Board of Parole over prisoners

confined in the penal institutions of the District of Columbia.

It is an accepted rule of statutory construction that the court look first to the plain language of the statute to determine its meaning. *See Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The statute provides that the U.S. Commission "have and exercise the same power and authority over prisoners ... as is vested in the District Board of Parole ..." D.C.Code § 24–209. Unfortunately, this language lends itself to more than one interpretation. It could be read as a grant of total and uninhibited power to the U.S. Commission—power different and separate from that of the D.C. Board. Thus, the U.S. Commission has all the power of the D.C. Board, including the freedom to apply its own regulations. This is the interpretation suggested by defendants. On the other hand, it could also be read to mean that Congress intended for the U.S. Commission to exercise all of the power and authority of the D.C. Board and enforce the laws and regulations established by that entity, as plaintiffs suggest. Clearly, resort to a plain reading of the statute's language will not resolve the issue and consideration of the legislative history is, therefore, appropriate.

*II. Legislative History*

In 1932, Congress created the District of Columbia "Board of Indeterminate Sentence and Parole" for the District of Columbia, Act of July 15, 1932, ch. 492, 47 Stat. 696 ("1932 Act"). Until this time, federal authorities had been responsible for rendering parole determinations for D.C. offenders housed in D.C. facilities as well as those incarcerated in federal prisons. With the establishment of the D.C. Parole Board, the federal authorities were relieved of the responsibility of determining parole for prisoners in D.C. institutions. *See* H.R. Rep. No. 881, 72nd Cong., 1st Sess. 2.

The newly established D.C. Parole Board had the authority to promulgate its own rules and regulations for the determination of prisoner parole, pursuant to the statutory framework enacted by Congress. The

bill provided for imposition of indeterminate sentences upon persons convicted of violating the D.C. criminal code, with minimum sentences not to exceed one-fifth of the maximum sentence, or fifteen years in the case of life imprisonment. After serving one-fifth of their maximum term, D.C. offenders were eligible for parole consideration. Even those offenders convicted before the effective date of the 1932 Act received the benefits of the new law. The bill also provided that D.C.Code offenders could be assigned to D.C., federal, or other facilities for incarceration. *Bracey v. Hill*, 11 F.Supp. 148 (D.C.Pa.1935).

At the time of its passage, the 1932 Act was hailed as a model penal system. The President of the National Committee on Prisons and Prison Labor wrote in support of the 1932 Act stating that its passage afforded Congress an "excellent opportunity ... for the development of a parole system which will be a model for many of the States and cities." H.R.Rep. No. 881, 72nd Cong., 1st Sess. 7.

However, it was not long after the passage of the 1932 Act that problems arose. Although Congress had intended in 1932 to erect an additional facility next to the Lorton Reformatory, that project, due to a lack of funding, was abandoned. Consequently, a lack of space resulted and D.C.Code offenders were committed to federal institutions. The major problems resulting from the Act with respect to D.C.Code offenders were the perceived inability of federal authorities to parole inmates serving indeterminate sentences and their counterparts in DCDC facilities benefitting from the new and innovative D.C. parole system. Thus, while the 1932 Act granted authority to house D.C.Code offenders in federal facilities, it failed to transfer power to the U.S. Commission to apply D.C. parole law to these inmates.

While an early equal protection challenge to this alleged disparity was unsuccessful, *see Aderhold v. Lee*, 68 F.2d 824 (5th Cir.), *cert. den.*, 292 U.S. 633, 54 S.Ct. 718, 78 L.Ed. 1486 (1934), it may well have served as the catalyst for the 1934 amendment which is at the heart of this suit. *See*

*Cosgrove, supra,* at 1129; *Bracey, supra,* at 149. *But see, Cosgrove, supra,* at 1134–42 (Bork, J., dissenting). Indeed, the president of the District of Columbia Board of Commissioners in a transmittal letter to the Senate seeking an amendment recognized this anomaly and suggested that this amendment to the 1932 Act should serve to rectify the problem.

"Since the jurisdiction of the Parole Board created by the act of Congress above referred to is limited to prisoners confined in the penal institutions of the District of Columbia, there is no provision of law for the parole of prisoners convicted in the District of Columbia and confined in the penal institutions of the United States. As Congress unquestionably intended that prisoners convicted in the District of Columbia should be entitled to parole, their confinement in a Federal penal institution, where they are deprived of the benefits of parole, would, therefore, be illegal."

Sen.Rep., No. 687, 73rd Cong., 2nd Sess., 2.

While the language and legislative history of § 24–209 are not complicated, arriving at a clear interpretation of the power and authority it confers upon the U.S. Commission is by no means a simple task. Plaintiffs maintain that the congressional intent to have federal authorities act essentially as agents for the D.C. Board and apply D.C. parole law is evident while defendants argue with the same confidence that the amendment granted federal authorities plenary authority over D.C.Code offenders under their supervision, permitting them to utilize their own guidelines.

### III. Judicial Interpretation

The defendant's narrow interpretation of § 24–209 was first articulated in *Story v. Rives*, 97 F.2d 182 (D.C.Cir.), *cert. den.*, 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377 (1938). In *Story*, the Federal parole board issued a warrant against a D.C.Code offender, formerly housed in a federal facility, based upon information that he had violated the conditions of his release. The prisoner challenged the authority of the federal parole board to issue such warrant, claiming

that he was subject exclusively to the law and power of the District of Columbia. The effect of § 24–209, he asserted, was to express a legislative intent to have D.C. Code offenders supervised entirely by the newly created D.C. Board of Parole. The federal parole board should not, therefore, have the power to issue a warrant for conditional release violations. The Court found to the contrary holding that the federal parole board did have the power to issue the warrant because § 24–209 required only that the United States Board of Parole apply D.C. law when making *parole* determinations, not when enforcing the *terms* of conditional release. The Court reasoned that the 1932 Act granted the D.C. Board power over inmates *confined* in D.C. prisons and the 1934 amendment granted that same power to federal authorities. As the petitioner in *Story* was no longer confined, the 1932 Act was not applicable and the federal authorities could apply federal law.

This decision, while expressing the court's view that § 24–209 did not grant plenary authority to the U.S. Commission over D.C. offenders in federal prisons, is not contrary to the plaintiffs' position in the present case. The case merely restricted the application of D.C. law to federally-housed D.C. offenders in *parole* situations. As the matter presently before the Court involves a question of parole, the holding in *Story* does not contradict the position of plaintiffs.

A broader interpretation of § 24–209 is found in *Gilstrap v. Clemmer*, 284 F.2d 804 (4th Cir.1960). In *Clemmer*, a D.C. offender housed in a D.C. facility maintained that as his crime was also considered to be an offense against the United States, he should be subject to the more lenient federal system when calculating his good time credits. The court disagreed and found that Congress had created a more stringent good time credits system for D.C. offenders in D.C. facilities. While the holding of *Clemmer* is rather narrow— addressing only the issue of the applicability of D.C. law to D.C.Code offenders incarcerated in D.C. prisons—the language of

the case suggests much more. While conceding it as dictum, the Court, wrote:

"Just as the penalty for the offense would be determined by the jurisdiction whose law was violated, whether the district or general federal, so would the terms and conditions of parole be governed by the law of that jurisdiction ... Thus, the ... Federal Parole Board [may be required] to apply D.C.Code provisions to prisoners in penal institutions other than in the District of Columbia who had been convicted of violations of District [of Columbia] laws ..."

*Id.* at 808–09. This case, of course, is not controlling, but the two cases suggest that § 24–209 lends itself to several differing interpretations.

The majority opinion in *Cosgrove v. Smith*, 697 F.2d 1125 (D.C.Cir.1983), recognized the differences in the common law interpretation of the statute but offered no definitive analysis of its meaning. The Court did indicate, however, that it found plaintiffs' characterization compelling.

"Congress ... enacted [§ 24–209], to ensure that the benefits of penological reform which had been provided for D.C. Code offenders did not vanish when the offenders were committed to federal custody. That the 1932 Act adopted a penal philosophy for the District, and that the 1934 amendment was meant to extend the benefits of that philosophy to D.C. offenders in federal custody, suggest that the amendment should not now be read to allow a different, harsher federal standard to be imposed on D.C. offenders in federal hands."

*Id.* at 1130. The dissenting opinion of Judge Bork, however, found the government's interpretation of § 24–209 persuasive. Judge Bork, differing with the majority, noted that Congress did not intend, in passing § 24–209, to alter the traditional practice of "permitting parole standards to vary from custodial jurisdiction to custodial jurisdiction without regard to the jurisdiction of conviction". *Id.* at 1140. Instead, Judge Bork reasoned, the section was designed to give back to the federal authorities some of the jurisdiction denied

them by the 1932 Act. He agreed with the holding in *Story* that "the 1934 amendment simply ensured that a particular change in custody did not result in the denial of any opportunity for parole altogether."

Judge Bork correctly notes that the majority in *Cosgrove* departs from the traditional rule used in parole determinations of applying the law of conviction without reference to the place of incarceration. In this respect, the Court finds Judge Bork's reasoning persuasive. However, the conclusion drawn in his dissent is more difficult to accept. It is clear from the available legislative history that the statute was intended to give the U.S. Commission the power to implement the D.C. parole law. The President of the Board of Commissioners wrote: "The purpose of the proposed bill is to confer upon the Federal Parole Board the same power over prisoners convicted in the District and confined in the Federal penal institutions as is conferred by said act upon the District Parole Board over prisoners confined in the penal institutions of the District." Sen.Rep., No. 687, 73rd Cong., 2nd Sess., 1. There is no support for the inference that Congress intended simply to reinvest the U.S. Commission with jurisdictional power over D.C. inmates. The legislative history, notwithstanding its dearth, appears to reflect that Congress intended the U.S. Commission to implement D.C. parole laws. The Court finds, therefore, that the legislative history and past judicial interpretations of § 24–209 suggest that Congress meant for all D.C. parole laws to be utilized by the U.S. Commission in rendering parole determinations for D.C. offenders in federal custody.

Indeed, other courts who have addressed this issue have found in plaintiffs' favor. In *Johnson v. Williford*, 821 F.2d 1279 (7th Cir.1987), the Court examined the plain language and the legislative history of the section and concluded that the intent of Congress in enacting § 24–209 was to have all of the D.C. Board's rules and regulations applied to all D.C. offenders, whether housed in D.C. or federal institutions. "The 'same power and authority' language of § 24–209 enables the U.S. Commission to make the parole-release determination for D.C.Code offenders housed in federal prisons but requires that body to employ D.C. laws and regulations in making such decisions." *Id.* at 1288. The Second Circuit in *Walker v. Luther*, 830 F.2d 1208 (2nd Cir. 1987) and the Eighth Circuit in *Brewer v. Swinson*, 837 F.2d 802 (8th Cir.1988) agreed with the reasoning employed in both *Johnson* and *Cosgrove*.

Moreover, the Seventh Circuit examined the practical implications of applying federal guidelines and D.C. statutes to a given parole determination. In *Johnson*, the plaintiff had his initial parole hearing delayed because of the application of D.C. parole laws and then was not "scheduled for another full hearing for 10 years, until 1992—due to the use of federal parole regulations—instead of receiving a full hearing the next year and every year thereafter, as would have been the case if D.C. parole laws and regulations had consistently been employed to determine his eligibility for parole hearings." *Id.* at 1287–88. Thus, the Court finds that an examination of the legislative history, past judicial interpretations of § 24–209, as well as practical considerations suggest that Congress meant for all D.C. parole laws to be utilized by the U.S. Commission in rendering parole determinations for D.C. offenders in federal custody.

## IV. D.C. Guidelines As Law

The issue then is whether D.C. parole guidelines should be considered laws? The federal defendants now concede that they must apply the statutes of the D.C. Parole system but assert that they need not apply its guidelines. Thus, the Court must focus on the difference in power and effect between statutes and guidelines or regulations. If guidelines can be considered sufficiently law-like in nature, then the D.C. guidelines must be utilized by the U.S. Commission. On the other hand, if the Court concludes that guidelines are more akin to policy statements than laws, federal defendants may be permitted to apply their own guidelines.

In *Walker v. Luther*, 830 F.2d 1208, 1216 (2nd Cir.1987), the Second Circuit held that the U.S. Commission must implement the D.C. guidelines as well as its statutes. The Court found that Congress does not differentiate between statutes and regulations in the parole area. Thus, there was no authority to support defendant's claim that Congress meant for the Commission to use only the statutes and not the guidelines in determining parole for D.C.Code offenders.

The Court must determine whether Congress intended to differentiate between statutes and guidelines in the application of § 24–209. The defendants argue that it did. The term "vested" as it is used in § 24–209, defendants submit, means that power which is conferred by Congress. As guidelines are promulgated by the Board and not by Congress, these guidelines are not power "vested" in the Commission by Congress. Thus, the guidelines were not part of the "power and authority" to which Congress referred in the statute.

This argument is not compelling. In § 24–201a, which creates the D.C. Board of Parole, Congress specifically provided that "[t]he Board of Parole ... shall have power to establish rules and regulations for its procedure." Therefore, in addition to creating the D.C. Board and granting it jurisdiction to parole its own offenders, Congress granted the D.C. Board power to establish rules and regulations pursuant to statute. Therefore, the guidelines promulgated by the D.C. Board are part of the "power" vested in the Board by Congress.

The federal defendants maintain that the guidelines are mere enforcement policy and not substantive rules as defined by the Supreme Court in *Chrysler Corp. v. Brown*, 441 U.S. 281, 301–03, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1978). As such, they contend, the guidelines do not carry the force and effect of law and may not be imposed upon the U.S. Commission. In the *Chrysler* case, the Supreme Court found that two criteria must be satisfied for an agency regulation to have the force and effect of law: the regulation must affect "individual rights and obligations" and

must be promulgated pursuant to, and in accordance with, an act of Congress.

Applying the rather broad test articulated in *Chrysler*, the Court finds that the guidelines do have the force and effect of law. The parole guidelines affect "individual rights" as they guide the determination of parole and were clearly promulgated pursuant to an act of Congress. While defendant correctly points out that the regulations are subject to change by the Board, this does not immediately turn them into mere "policy statements". They are regulations which determine the rights of prisoners to be free from incarceration.

The federal defendants also point to *Ruip v. United States*, 555 F.2d 1331 (6th Cir.1977), in support of their proposition that the guidelines do not have the force and effect of law. In *Ruip*, the Sixth Circuit was asked to determine whether federal "administrative guidelines on parole come within the prohibition against *ex post facto* laws." *Id.* at 1335. It found that "these guidelines [do not] have the characteristics of law" and thus would not be considered *ex post facto* laws. "The Commission" wrote the Court, "remains free to make parole decision outside of these guidelines." Because of this flexibility, the court reasoned, that the guidelines do not carry the force and effect of law.

Defendants argue that the holding in *Ruip* mandates a finding that the D.C. guidelines are similarly policy-like and are, therefore, not part of the "authority" transferred to the U.S. Commission by way of § 24–209. It does not appear, however, that the reasoning employed in *Ruip* has been followed in this Circuit. Careful research reveals that this Circuit has not adopted the test articulated in *Ruip* for determining the difference between policy statements and law. Several cases have articulated a different approach to the issue.

One case in point, *Pickus v. United States Board of Parole*, 507 F.2d 1107 (D.C.Cir.1974), involved a group of inmates who challenged the U.S. Board of Parole's guidelines, claiming that because there had been no rule-making proceedings held be-

fore their passage, the guidelines were invalid under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.* Defendants argued that the guidelines were mere policy statements which are not subject to the notice and comment requirements of the APA.[3]

The Court found to the contrary and held that these guidelines were calculated to have a substantial effect on important parole decisions. And while the guidelines do not produce a formula for determining parole suitability, leaving room for the exercise of individual discretion, they "help focus the decision-maker's attention on the Board-approved criteria. They thus narrow his field of vision ... [and because] they define a fairly tight framework to circumscribe the Board's statutorily broad power ... they are substantive agency action." *Id.* at 1113. *See also, Guerra v. Meese,* 614 F.Supp. 1430 (D.D.C.1985) (where the Court, following *Pickus,* extended its reasoning to conclude that the Notes and Procedures provision, a directive issued by the Commission, had the force and effect of law.)

The Court finds the reasoning in *Pickus* more compelling. Both *Ruip* and *Pickus* were decided before the Supreme Court's ruling in *Chrysler* and while the latter does not overrule either of the two lower court cases, the reasoning employed in *Pickus* is closer to that found in *Chrysler. Ruip* does not mention the important guidepost articulated in *Chrysler* for determining if a rule has the effect of law; that is, does it effect substantive rights. That issue is never discussed in *Ruip* and diminishes the persuasiveness of its holding.

Accordingly, the Court finds that the D.C. guidelines have the force and effect of law. They are substantive regulations which affect the individual rights of D.C. Code offenders wherever incarcerated. Moreover, they sufficiently define the scope of parole suitability such that they can be distinguished from mere policy statements. They are, therefore, part of the "power and authority" vested by Congress to the D.C. Board.

## V. Similarity in Guidelines

The federal defendants argue that even if the Court finds that § 24–209 mandates application of the D.C. guidelines, they may be free to implement the federal equivalent. This is so, they claim, because the two sets of guidelines are substantially similar.

The District of Columbia Board of Parole did not promulgate the parole guideline at issue herein until March 4, 1985.[4] The guidelines emphasize early release of an offender who responds favorably to rehabilitative efforts. The federal guidelines, enacted in 1976, in contrast, are primarily concerned with punishment and the public safety in determining parole suitability. While the differences between the two sets of guidelines do not appear to be as dramatic as plaintiffs have characterized, there are significant disparities.

When the D.C. Board was in the process of promulgating its guidelines, it had the 1976 federal guidelines as a guide. However, the federal guidelines were not adopted and the Court finds this rejection significant.

Furthermore, the Court notes that there are important differences between the two systems. For example, while the Board did adopt the idea of a Salient Factor Score from the federal guidelines, the factors employed to reach this score are different. The Board utilizes four factors to determine suitability for parole: two pre-incarceration factors and two post-incarceration factors. This is done to ensure that the prisoner's behavior while incarcerated is considered. The Commission uses only two pre-incarceration factors, thus de-emphasizing any rehabilitative results from incarcer-

---

**3.** Defendants also maintained in *Pickus* that the guidelines were interpretative rules or rules relating to agency practice and procedure. Although such rules are exempt from the strictures of the APA, they are not relevant to the issue under consideration.

**4.** The Board did promulgate a first set of guidelines in 1982, which plaintiffs characterize as "rather crude ... [and] hastily promulgated."

ation. Moreover, while the pre-incarceration factors are similar,[5] the failure of the U.S. Commission to consider post-incarceration behavior in reaching a parole decision, renders the two systems substantially dissimilar.

Finally, on a more practical note, the Seventh Circuit in *Johnson v. Williford,* 821 F.2d 1279, 1285 (7th Cir.1987) demonstrated the differences between the two sets of guidelines by way of illustration. The Court noted that "[a] person ... who has been denied parole and for whom no presumptive release date has been set, will not receive a full parole reconsideration hearing for 15 years under federal regulations, but would receive one every year under D.C. regulations." Indeed the Court of Appeals in *Cosgrove v. Smith,* 697 F.2d 1125, 1133 (D.C.Cir.1983), noted after a discussion of the federal guidelines, that "[t]he District of Columbia Board does not employ similar guidelines in making parole decisions." For these reasons, the Court finds that there are significant differences between the D.C. guidelines and those used by the U.S. Commission. Accordingly, the Court finds that the federal defendants may not use its own parole guidelines in lieu of the D.C. regulations.

## CONCLUSION

While the legislative history and plain meaning of the statute are not definitive on the issue, they do tend to support plaintiffs' position that Congress intended, in enacting § 24–209, that *all* of the laws and regulations applied by the D.C. Board be utilized by the U.S. Commission as well. Moreover, this Circuit has held that parole guidelines have the force of law and thus are part of the "power and authority" vested in the D.C. Parole Board and granted to the U.S. Parole Commission pursuant to

§ 24–209.[6] Accordingly, they must be applied to D.C. Code offenders incarcerated in federal institutions. For all of the reasons discussed above, the Court grants the motion of plaintiffs for summary judgment, and denies the motion of federal defendants to dismiss.

---

5. Both systems use the Salient Factor Score as one of the pre-incarceration factors and there is some similarity between the Offense Severity Rating employed by the U.S. Commission and the Type of Risk Assessment utilized by the D.C. Board.

6. The Court notes that if these regulations had not been deemed to be statutory in nature, the Commission would not be free to apply its own guidelines to D.C. offenders housed in federal

facilities. The federal parole guidelines, were, of course, promulgated pursuant to federal statutes, and are therefore completely inapplicable now that defendants concede that the D.C. statutes are to be used. Thus, if the Court had granted defendants' request and not mandated that the D.C. guidelines be utilized, the Commission would have had to promulgate its own guidelines pursuant to the *D.C. Parole Statutes.*