914 F.2d 260
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James BRIDGEMAN, Petitioner/Appellant,
v.
Edward J. BRENNAN and United States Parole Commission,
Respondents/Appellees.
 No. 89-2176.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 29, 1990.*
Decided Sept. 10, 1990.
 
 Before FLAUM, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Petitioner James Bridgeman appeals the dismissal of his habeas corpus petition filed pursuant to 28 U.S.C. Sec. 2241. He alleged that, although he is entitled to parole, the defendants denied him parole and are holding him illegally. The district court dismissed his petition and denied leave to appeal in forma pauperis. Bridgeman paid the filing fee, but proceeds pro se.
 
 I.
 
 2
 In 1973, when Bridgeman was 24 years old, he was tried and convicted for the rape and murder of an 18 year old woman in Washington, D.C. The facts disclosed that Bridgeman assaulted and raped the woman and then held her against her will in his apartment. During this time he apparently shot her with a BB gun and eventually strangled her to death. He was sentenced to 10 to 30 years in prison and was incarcerated in the D.C. jail.
 
 
 3
 Shortly after being incarcerated, Bridgeman was involved in an attempted escape from the jail. Hostages were taken and many persons were injured during the course of the incident. Bridgeman was allegedly a ringleader and was convicted of attempted escape, armed robbery, and riot. For these crimes, he was sentenced to 5 to 20 years concurrent to his D.C. conviction, and a 5 year consecutive term. Thus, Bridgeman has an aggregate sentence of 10 to 35 years.
 
 
 4
 In 1974, Bridgeman was transferred from the D.C. Department of Corrections to federal custody and has been incarcerated at federal penal institutions since that time.
 
 
 5
 In 1983, the Parole Commission gave Bridgeman a parole hearing. The hearing report noted that Bridgeman had no criminal record prior to the incidents described above, and that, although he compiled a poor institutional record initially, his record improved once he was transferred to Oxford, Wisconsin. The report concluded that despite these improvements Bridgeman was denied parole due to the seriousness of his underlying offenses. The panel ruled that Bridgeman would receive parole reconsideration in 10 years. At an interim hearing in 1985, the panel recommended that Bridgeman be required to serve out the remainder of his term without parole due to the serious nature of his offenses.
 
 
 6
 In both of Bridgeman's hearings, the panels applied federal parole guidelines rather than D.C. parole guidelines. In Johnson v. Williford, 821 F.2d 1279 (7th Cir.1987), this court held that the U.S. Parole Commission was required to apply D.C. parole guidelines to D.C. inmates confined in federal prisons, rather than applying federal parole guidelines. This rule is followed in at least three other circuits. Cosgrove v. Smith, 697 F.2d 1125 (D.C.Cir.1983), on remand 703 F.Supp. 995 (D.D.C.1988); Walker v. Luther, 830 F.2d 1208 (2d Cir.1987); Brewer v. Swinson, 837 F.2d 802 (8th Cir.1988).
 
 
 7
 In response to Johnson, the Parole Commission held a hearing for Bridgeman in order to apply the appropriate guidelines to his case. The hearing was conducted on September 21, 1988, and the panel denied parole. The panel noted that in 1982 (the time Bridgeman was supposed to have had his initial hearing under the D.C. guidelines), he would have had a total point score of 2. The point system consisted of calculating a Salient Factor Score (SFS) and considering pre- and post-incarceration factors such as prior convictions, age at the time of commission, history of drug abuse, institutional record, etc. Bridgeman's point total of 2 qualified him for parole "at the initial hearing with the highest level of supervision."
 
 
 8
 The report indicated that at a rehearing, Bridgeman would also have had a total of 2 points (although in the interim period he would have been given one point for institutional misbehavior and would have lost one for program achievement). The panel concluded, however, that parole was inappropriate for Bridgeman:
 
 
 9
 [T]he Panel is of the decision that a departure from the guidelines is warranted based upon the fact that the original offense was unusually brutal with the victim being tortured and subsequently strangled. Additionally, subject was involved in an escape attempt while at the District of Columbia Jail where hostages were taken[,] some ... receiving serious injuries as a result of beatings. Additionally, subject has continued to receive serious Incident Reports until 1985.
 
 
 10
 The panel scheduled Bridgeman for a rehearing a year later and informed him in writing of its decision.
 
 
 11
 Bridgeman thereafter filed his petition for habeas corpus in district court. The court denied his petition, holding that Bridgeman was not entitled to a D.C. guidelines hearing until 1987 (after Johnson v. Williford was decided), and that the Commission followed the appropriate guidelines and procedures in denying him parole at his 1988 hearing. Bridgeman now appeals this decision.
 
 II.
 
 12
 Bridgeman first argues that the Commission erred in departing from the D.C. parole guidelines. Section 204.22 is the section at issue:
 
 
 13
 The Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.
 
 
 14
 Bridgeman argues that this section can only be used to deny parole at an initial hearing. He claims that it was used against him at his "rehearing," and therefore the denial of parole was invalid.
 
 
 15
 Bridgeman's first premise is not supported by the plain language of the regulation: there is nothing in section 204.22 that prohibits the Commission from departing from the guidelines at a rehearing. Bridgeman argues that his interpretation can be inferred from the structure of the guidelines. He claims that, when the guidelines are read as a whole, the intent is clear that departures can only occur at the initial hearing. Again, nothing in the structure of the guidelines suggests this outcome. Section 204.22 is the last section in the guidelines. It is not contained in a section devoted solely to initial hearings. In fact, it follows directly after the section on procedures at rehearings. See Sec. 204.21. In short, the structure of the guidelines reveals no intent that departures occur only at initial hearings.
 
 
 16
 Finally, Bridgeman points to the panel worksheets to support his interpretation that departures are limited to initial hearings. The "Initial Hearing" worksheet contains a section providing six specific reasons for departing from the guidelines to deny parole. These include (1) repeated failure of previous parole; (2) current offense involves on-going criminal activity; (3) lengthy history of criminally related alcohol abuse; (4) history of repetitive sophisticated criminal behavior; (5) unusually extensive and serious prior record; and (6) unusual cruelty to victims. This section also provides a number of considerations for departing from the guidelines in order to grant parole, including: prior record results exclusively from trivial offenses; exceptional achievement in educational or vocational programs during incarceration; change in the availability of community resources leading to better parole prognosis; and poor medical prognosis.
 
 
 17
 In contrast, the "Rehearing" worksheet provides three reasons for departing from the guidelines, and these reasons seem to be related to departures to grant, not deny, parole: (1) change in availability of community resources leading to better parole prognosis; (2) poor medical prognosis; or (3) other change in circumstances. The rehearing worksheet contains no specific listing of factors invocable to deny parole. Yet Bridgeman's conclusion that one cannot therefore be denied parole on rehearing seems inconsistent with the guidelines.
 
 
 18
 If, for example, the parole candidate at his initial hearing did not attain a point total qualifying him for parole, there would be no need to continue to the section listing factors for departing from the guidelines (unless the panel wanted to grant parole despite the guideline score). The panel would have no reason to continue if it wanted to deny parole since the candidate was denied parole under the guidelines themselves and a departure was unnecessary. If the candidate later qualified for parole under the guidelines because of improved institutional behavior, under Bridgeman's interpretation the panel on rehearing would be prohibited from considering (for the first time) factors that would weigh against the granting of parole. Nowhere in the regulations or guidelines is there a requirement that the panel consider such aggravating factors only at the initial hearing,[1] and Bridgeman cites no cases interpreting section 204.22 in such a restrictive fashion.
 
 
 19
 In addition, even if we were to accept Bridgeman's theory that section 204.22 can only be applied at an initial hearing, this does not mean that Bridgeman is entitled to immediate release as he seems to think. Prisoners like Bridgeman become eligible for parole, they are not entitled to it; the decision to parole an inmate is a discretionary one. See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 441 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); Connecticut Board of Pardons v. Dumshcat, 452 U.S. 458, 463-64 (1981) (Greenholtz "rejected the claim that a constitutional entitlement to release ... exists independently of a right explicitly conferred by the State.").
 
 
 20
 Section 204.22 demonstrates the discretionary nature of parole under the D.C. guidelines. Despite the prisoner's score, the panel is entitled to depart from the guidelines and deny parole. Even if we were to remand Bridgeman's case, we have no doubt that the Commission would arrive at the same decision it did on September 21, 1988. This conclusion is firmly supported by the record. At Bridgeman's initial hearing in 1983, the Commission denied him parole under the federal guidelines for precisely the same reasons it could have denied him parole had the Commission been applying the D.C. guidelines at that time: his initial crimes involved unusual cruelty and harm. In 1985, the Commission determined to deny him parole and require him to serve out the remainder of his sentence. These two decisions were subsequently vacated upon the application of the D.C. guidelines, but they are important in revealing that Bridgeman would fare no better if the Commission was required at this point to apply section 204.22 in an initial hearing.
 
 
 21
 Finally, Bridgeman contends that he would have fared better had his hearing been held before the D.C. Parole Board rather than the U.S. Parole Commission. To support this claim, he alleges that he has personal knowledge of an official Parole Commission policy that requires hearing panels applying D.C. guidelines to deny parole to D.C. inmates unless they would receive parole under the federal guidelines. The generally more lenient D.C. guidelines would, in most cases, grant parole to an inmate before he would be eligible under federal guidelines. Bridgeman's claim is completely conclusory and wholly unsupported. There is no evidence that, even if this alleged policy existed, the Commission applied such a policy in Bridgeman's case. Bridgeman's parole was denied under section 204.22, and the panel properly supported its decision with specific factors.
 
 III.
 
 22
 Bridgeman's section 2241 petition was properly denied below and therefore his appeal is
 
 
 23
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Of course, there is also an argument that the panel did not really apply section 204.22 at Bridgeman's "rehearing." The September 21, 1988 hearing was curative in nature; it was held to apply the appropriate guidelines to Bridgeman's case. The panel attempted to approximate the sequencing of the hearings to which Bridgeman was entitled and then announced its conclusion that a departure was appropriate. It seems to elevate form over substance to say that the departure occurred at a "rehearing" rather than at an "initial hearing" when only one hearing was involved