**Phillip E. DUCKETT, Petitioner,**

v.

**U.S. PAROLE COMMISSION, Warden Breannon, USP Lewisburg, Respondents.**

**Civ. A. No. 3:CV–92–181.**

United States District Court, M.D. Pennsylvania.

May 28, 1992.

**134**

Phillip E. Duckett, pro se.

Robert J. DeSousa, U.S. Attorney's Office, Lewisburg, Pa., for respondents.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

Phillip E. Duckett, an inmate at FCI–Lewisburg, Pennsylvania, has filed a *pro se* petition for a writ of habeas corpus, challenging the decision of the United States Parole Commission (Commission) in December of 1991 to deny him parole and to continue him for a parole hearing in October of 1992.

### II. *Background.*

Some background on the District of Columbia parole system is appropriate before moving to the specifics of Duckett's case and his challenge to the Commission's decision in regard to his parole.

The District of Columbia uses a "point assignment grid" to establish parole eligibility. The grid combines a salient factor score (SFS), a numerical value which in turn is assigned a category for degree of risk of "low," "fair," "moderate," or "high," with points assigned for certain pre and post-incarceration factors.

The salient factor score is calculated by using the same factors considered in determining a salient factor score under the federal parole guidelines. *See* 28 C.F.R. § 2.20 (1991) (federal guidelines). The SFS considers the number of prior convictions the potential parolee has.

The pre-incarceration factors include a "type of risk assessment" which takes into account three broad categories of risk. The first category, the one at issue in the instant case, is for "violence" and considers whether the current offense involved a felony in which the prisoner caused or threatened to cause death or serious bodily injury or whether he has two

or more previous convictions for a crime of that character. The remaining categories under "type of risk" are for current or past offenses involving "weapons" and "drug trafficking." Even if more than one of these inquiries is answered in the positive, the prisoner is still only assigned a +1 under "type of risk."

■ There are two post-incarceration factors. One, the "institutional adjustment" factor, is concerned with "serious disciplinary infractions" and the second, the "institutional program participation" factor, is concerned with achievement in prison programs and work assignments. The score here is either a plus or minus 1.

28 D.C.M.R. § 204.1 provides that the Board shall use these criteria "to exercise its discretion" to determine whether a prisoner should be paroled "when, and only when, release is not incompatible with the safety of the community. Any parole release decision falling outside the numerically determined guideline shall be explained by reference to the specific aggravating or mitigating factors as stated in Appendices 2–1 and 2–2."

28 D.C.M.R. § 204.21 provides that at parole rehearings, "the Board shall take the total point score from the initial hearing and adjust that score according to the institutional record of the candidate since the last hearing pursuant to Appendix 2–2." If the total points are 3 or less, parole is to be granted "with highest level or supervision required." *Id.*

28 D.C.M.R. § 204.22 further provides that:

> The Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

■ The discretion to parole is grounded in statutory authority. D.C.Code § 24–204 provides, in relevant part, as follows:

> (a) Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

Consistent with this statutory provision, which contains no mandatory language requiring parole once certain conditions are satisfied, it has been held that the District of Columbia Board of Parole has broad authority over parole decisions and judicial review is limited to whether the Board acted arbitrarily or capriciously or abused its discretion. *See Rookard v. District of Columbia Board of Parole,* No. 86–3228 (D.D.C. Jan. 21, 1988). Since the Commission exercises the same authority over District of Columbia convicts incarcerated in federal penitentiaries, *see Cosgrove v. Thornburgh,* 703 F.Supp. 995 (D.D.C.1988), the same standard should apply to Commission decisions involving prisoners incarcerated under D.C. law. *See Lewis–Bey v. United States Parole Commission,* No. 3:CV 90–991 (M.D.Pa. April 30, 1991) (Conaboy, C.J.). Accordingly, our review of the Commission's decision is limited to determining whether it has acted arbitrarily or capriciously or abused its discretion.[1] We turn now to the specifics of Duckett's case.

The petitioner is serving an aggregate sentence of 47 years, 3 months, and 27 days on five convictions under District of Columbia law, three 1967 convictions for petty larceny, unauthorized use of a motor vehicle, and carnal knowledge and housebreaking, a 1969 conviction for rape and a 1984 conviction for armed robbery and burglary. The last offense was committed while Duckett was in a halfway house

---

1. Parenthetically, this is the same standard that would have been used if the Commission had been applying the federal guidelines. *See Zannino v. Arnold,* 531 F.2d 687 (3d Cir.1976).

awaiting parole from the four prior convictions.

During his incarceration Duckett was periodically considered for parole under the federal parole guidelines but in 1989, in accord with *Cosgrove, supra,* the petitioner began to receive parole consideration under the District of Columbia guidelines. In October of 1989, he received his initial hearing under those guidelines and the hearing examiners analyzed his case as follows:

> Applying the D.C. guidelines, subject has a salient factor score which makes him a moderate degree of risk and he receives a point score of + 2. Under type of risk, his offense behavior includes violence and weapons and he receives a point score of + 1. Under negative institutional behavior, he receives a score of plus one and under a program achievement he receives a score of − 1 because he is working well and not (sic) management problem. The total D.C. point score is three which indicates that parole should be denied at the initial hearing and a rehearing scheduled.

(respondents' exhibit 1).

The examiner panel made a split recommendation for further incarceration and the National Commissioners, deciding to continue Duckett for a review hearing in October of 1991, issued the following notice of action on November 27, 1989:

> You have a score of three points under the District of Columbia parole guidelines ... Those guidelines indicate that parole should not be granted at this time. After consideration of all factors and information presented, a departure from the guidelines at this consideration is not found warranted.

(respondents' exhibit 2).

Duckett received his reconsideration hearing on October 16, 1991. The hearing panel made the following calculations under the D.C. guidelines:

> Subject now has a D.C. point score of plus 2. This is a result of his having 3 points from his previous hearing and 1 point subtracted for program achievement, specifically his outstanding work

in Prison Industries. As indicated above, the misconduct report is not new and therefore no point is added for negative institutional adjustment.

(respondents' exhibit 3).

As previously noted, under D.C. guidelines, a + 2 score indicates that the prisoner should be paroled and the panel saw no reason to depart from this provision. It recommended parole effective April 16, 1992, with a stay in a halfway house in the meantime.

The National Commissioners rejected this recommendation. They decided to continue Duckett for a review hearing in October of 1992. The notice of action, dated December 5, 1991, stated the following:

> You have a score of 2 points under the District of Columbia parole guidelines ... Those guidelines indicate that parole should be granted at this time. However, a departure from the guidelines at this consideration is found to be warranted because your prior record and misconduct record indicate that you pose a serious risk to the public.

(respondents' exhibit 4).

Duckett is attacking this determination in the instant petition.

### III. *Discussion.*

Duckett first contends that the Commission improperly double counted his criminal and institutional records by taking them into account in setting his salient factor score and then using them again as justification to go beyond the guidelines.

If the Commission had indeed double counted petitioner's prior criminal record and institutional record, we believe that it would have acted improperly. In *Harris v. Martin,* 792 F.2d 52 (3d Cir.1986), the Third Circuit stated that double counting was not permissible in federal guideline cases in light of 18 U.S.C. § 4206. 28 D.C.M.R. § 204.22 is similar and thus we believe the same standard should apply here.

 The Commission defends its action by noting that under the "type of risk" assessment, petitioner could receive only a maximum of + 1 even though he may have

had several prior convictions which satisfy the various categories in that assessment. The Commission argues that its decision was therefore proper because Duckett "is serving five separate sentences, two of which involved threats to cause serious bodily injury to another individual, and dangerous weapons (and armed robbery offenses)," (respondents' brief at p. 4), factors which would not have been taken into account in calculating the type of risk assessment. The Commission also contends that it was taking into account the nature of the prior record, which is not impermissible double counting. *See e.g., Bialkin v. Baer,* 719 F.2d 590 (2d Cir.1983) (no double counting when factors relied upon to set a release date above the guideline range were not also used to establish the petitioner's severity rating under the federal guidelines).

We agree with this argument. The "type of risk assessment" does add only + 1 to a potential parolee's total score despite the fact that he may earn that + 1 for both a current offense involving threat of serious bodily injury and a past offense involving weapons, the situation in the instant case. A parole decision taking into account all of these factors, and which refuses to ignore any of them, does not double count. *See Bialkin, supra.*

Duckett next argues that the Commission provided an inadequate statement of its reasons in departing from the guidelines. He points to the characterization of him as a "serious risk to the public," and argues that this was really an application of a standard used in federal parole cases. *See* 18 U.S.C. § 4206(a), not D.C. ones. Additionally, the D.C. parole regulations require that any decision beyond the guideline range must refer to the specific factors mentioned in Appendix 2–2 to the regulations but his notice of action does not refer to those factors.

■ Appendix 2–2 applies to parole rehearings and lists the following reasons to be employed in connection with a decision above the guideline range: (1) change in the availability of community resources leading to better parole prognosis; (2) poor medical prognosis; and (3) other change in circumstances. None of these reasons were noted in the notice of action when the Commission went above the guidelines in Duckett's case.

We reject the argument based on Appendix 2–2. We believe that the statute and regulations confer sufficient authority on the Commission to go above the guidelines without having to satisfy these factors. As noted, D.C.Code § 24–204(a) provides, in relevant part, that "[w]henever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law [and] that his release is not incompatible with the welfare of society," (brackets added) it may grant parole. As also noted, 28 D.C.M.R. § 204.22 further provides that the "Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter." The Board has done that. Its notice of action informs Duckett that it took him above the guideline range because "his prior record and misconduct record indicate[d] that [he] pose[d] a serious risk to the public." (brackets added). Petitioner has not otherwise attacked the adequacy of this notice and, for the purposes of the instant case, it is sufficient.[2]

We also do not think that the Commission's use of language referring to Duckett as "a serious risk to the public" means that it had improperly relied on the federal standard in 18 U.S.C.A. § 4206(a)(2) (West 1985) (repealed) which required the Com-

---

**2.** The Commission has also argued that it could set a parole date above the guidelines because Duckett committed his armed robbery and burglary offense while he was in a halfway house preparing to be released on parole from his four

prior convictions. This rationale was not contained in the notice of action and we cannot consider it. *See Marshall v. Lansing,* 839 F.2d 933, 943 (3d Cir.1988).

mission in federal parole cases to consider whether "release would ... jeopardize the public welfare." D.C.Code § 24–204 provides that parole may be granted if "release is not incompatible with the welfare of society...." As the Commission argues, consideration of the public safety is a factor encompassed by its duty to consider the welfare of society.[3]

We will issue an appropriate order.

### ORDER

AND NOW, this 28th day of May, 1992, upon consideration of the petition for a writ of habeas corpus, it is ordered that:

1. The petition is denied.

2. The Clerk of Court shall close this file.

---

**3.** *Williams–El v. United States Parole Commission,* 3:CV–90–649 (M.D.Pa. July 24, 1990) (Kosik, J.), cited by the plaintiff, is distinguishable for this reason. It was apparent in that case that the Commission had improperly used federal statutory standards at 18 U.S.C. § 4206(a)(1) in deciding the parole for a District of Columbia prisoner.